Filed 8/25/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re RICKY R. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E078646 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ1900660) |
| v. | OPINION |
| N.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Kelly L. Hansen, Judge. Conditionally reversed and remanded with directions.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Teresa K.B. Beecham and Catherine E. Rupp, Deputy County Counsel, for Plaintiff and Respondent.

1

N.G. (Mother) appeals from the juvenile court's order terminating parental rights to her children, Ricky R. and Jayden R. Mother argues that the Riverside County Department of Public Social Services (DPSS) failed to discharge its duty of initial inquiry under state law implementing the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). DPSS does not dispute that it failed to discharge its duty of initial inquiry, but it argues that the error was harmless. DPSS also moves to dismiss the appeal as moot on the basis of postjudgment evidence, and it asks us to consider that evidence under several theories.

We conclude that DPSS prejudicially erred by failing to comply with its duty of initial inquiry under ICWA-related state law. (Welf. & Inst. Code, § 224.2, subd. (b); unlabeled statutory citations are to this code.) We also deny DPSS's motion to dismiss the appeal and decline to consider the postjudgment evidence of ICWA inquiries conducted while this appeal was pending. We hold that the juvenile court should consider that evidence in the first instance and determine whether DPSS discharged its duties under ICWA and related state law. Accordingly, we conditionally reverse the order terminating parental rights and remand the matter for further proceedings.

BACKGROUND

In October 2019, DPSS filed a petition under section 300, subdivisions (b)(1) and (g), alleging that 10-year-old Ricky and eight-year-old Jayden were at substantial risk of serious physical harm or illness and that they had been left without any provision for support. The petition alleged that Mother abused controlled substances, had a criminal history, and neglected the children's health, safety, and well-being. It alleged that R.R.

2

(Father) failed to provide the children with adequate food, shelter, clothing, and other types of support and that his whereabouts were unknown. (Father is not a party to this appeal.)

Before the detention hearing, Mother told DPSS that she did not have any Indian ancestry.[1] DPSS was unable to locate and interview Father. Mother and Father were not present at the detention hearing. But Mother's counsel said that she had asked Mother about Indian ancestry, and Mother denied any such ancestry. The court ordered both parents to complete Judicial Council form ICWA-020 (Parental Notification of Indian Status).

In preparation for the jurisdiction and disposition hearings, DPSS reported that it still was unable to locate Father. At the combined jurisdiction and disposition hearing, Mother told the court that she did not have any Indian ancestry. She also filed form ICWA-020 and checked the box on the form indicating that she did not have Indian ancestry, as far as she knew. The court found that DPSS had conducted a sufficient ICWA inquiry and that ICWA did not apply. The court also struck the allegation in the petition that Mother neglected the children's health, safety, and well-being, but it found the remaining allegations to be true and took jurisdiction over the children. As for disposition, the court removed the children from the parents' custody, ordered reunification services for Mother, and denied reunification services for Father. Mother

---

[1]     "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

provided maternal grandfather's contact information and asked that DPSS assess him for placement of the children.

DPSS located Father in April 2020. The agency asked whether he had any Indian ancestry, and Father said that he did not. At the six-month review hearing, the court ordered another six months of reunification services for Mother. The court also ordered reunification services for Father.

A few months later, maternal grandfather's application for placement was denied because his adult daughter lived in the home and had a criminal record. Another relative, maternal great-aunt, had applied for placement, but she ultimately withdrew the application. Maternal grandfather died in October 2020.

Father told DPSS that he was living with paternal grandmother and paternal great-grandmother in November 2020. DPSS contacted paternal grandmother and asked whether she wanted to be assessed for placement. Around the same time, Mother's cousin contacted DPSS and expressed an interest in having the children placed with her.

At the 12-month review hearing, the juvenile court terminated reunification services for both parents and set the matter for a section 366.26 hearing. Shortly after that hearing, DPSS spoke again with paternal grandmother. She continued to live with Father and paternal great-grandmother, and they did not have room to take placement of the children.

The children's foster parents were not willing to adopt the children. The court continued the section 366.26 hearing several times so that DPSS could search for an adoptive home and complete the preliminary adoption assessment.

4

In August 2021, DPSS placed the children with Mother's cousin, who wanted to adopt them. Mother's cousin said that she and her family did not have any Indian ancestry. DPSS filed a status review report that contained contact information for a number of relatives—maternal grandmother, maternal aunt, paternal grandmother, and maternal great-aunt—but there was no indication in the report that DPSS had asked those relatives about Indian ancestry.

The continued section 366.26 hearing took place in February 2022. The court found that the children were likely to be adopted and terminated parental rights. Although the court did not make an express ICWA finding, the order terminating parental rights "was 'necessarily premised on a current finding by the juvenile court'" that ICWA did not apply to the children. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 740.)

DISCUSSION

Mother argues that we must reverse the order terminating parental rights because DPSS failed to discharge its duty of initial inquiry under ICWA-related state law. We agree. In addition, we deny DPSS's motion to dismiss the appeal and its request to consider postjudgment evidence.

I. *Reversible ICWA Error*

ICWA establishes minimum federal standards that a state court must follow before removing Indian children from their families. (*In re T.G.* (2020) 58 Cal.App.5th 275, 287.) California law implementing ICWA also imposes requirements to protect the rights of Indian children, their families, and their tribes. (See §§ 224-224.6; *In re Abbigail A.* (2016) 1 Cal.5th 83, 91 ["persistent noncompliance with ICWA led the Legislature in

5

2006 to 'incorporate[] ICWA's requirements into California statutory law'"].) An Indian child is any unmarried person under 18 who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (b).)

"Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 741.) DPSS and the juvenile court have an "affirmative and continuing duty to inquire" whether a child in a dependency proceeding "is or may be an Indian child." (§ 224.2, subd. (a).) The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry. (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 290.) ICWA also imposes a duty to provide notice of the proceedings to the pertinent Indian tribes. (25 U.S.C. § 1912(a); § 224.3, subd. (a).) Notice enables the tribes "to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter." (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 288.)

The duty of initial inquiry applies in every dependency proceeding. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 884-883 (*Austin J.*).) Federal regulations require state courts to ask each participant "at the commencement" of a child custody proceeding "whether the participant knows or has reason to know that the child is an Indian child." (25 C.F.R. § 23.107(a).) State law requires the court to pursue an inquiry "[a]t the first appearance in court of each party" by asking "each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child."

6

(§ 224.2, subd. (c).) In addition, when DPSS takes a child into temporary custody, the agency must ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child," and the reporting party whether the child is or may be an Indian child. (§ 224.2, subd. (b).) Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

"[R]eason to believe that an Indian child is involved" triggers the duty of further inquiry. (§ 224.2, subd. (e), 1st par.) "[R]eason to believe" exists whenever the court or DPSS has "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).) The required further inquiry includes interviewing the parents and extended family members to gather the information necessary for an ICWA notice, contacting the Bureau of Indian Affairs and State Department of Social Services to gather the names and contact information of the pertinent tribes, contacting the tribes, and contacting any other person who may reasonably be expected to have information regarding the child's membership status or eligibility. (§ 224.2, subd. (e)(2)(A)-(C).)

The duty to provide notice arises only if DPSS or the court "knows or has reason to know that an Indian child is involved." (25 U.S.C. § 1912(a); § 224.3, subd. (a); *Austin J.*, *supra*, 47 Cal.App.5th at pp. 883-884.) Federal regulations define the grounds for reason to know that an Indian child is involved. (25 C.F.R. § 23.107(c)(1)-(6).) State law conforms to that definition. (§ 224.2, subd. (d)(1)-(6).)

7

When DPSS fails to comply with the duty of initial inquiry under state law, we will find the error to be prejudicial and conditionally reverse if "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) That standard does not require "proof of an actual outcome (that the parent may actually have Indian heritage)." (*Id.* at pp. 743-744.) The missing information need only be relevant to the ICWA inquiry, "whatever the outcome will be." (*Id.* at p. 744; see also *In re Antonio R.* (2022) 76 Cal.App.5th 421, 435 ["in determining whether the failure to make an adequate initial inquiry is prejudicial, we ask whether the information in the hands of the extended family members is likely to be meaningful in determining whether the child is an Indian child, not whether the information is likely to show the child is in fact an Indian child"].)

In this case, DPSS failed to discharge its duty of initial inquiry. DPSS asked the parents about Indian ancestry. But the agency failed to ask extended family members about it. What is more, the juvenile court erred by implicitly finding that ICWA did not apply, in the absence of evidence that DPSS had discharged its duty of initial inquiry in full. (*In re J.C.* (2022) 77 Cal.App.5th 70, 79-80.)

The ICWA error was prejudicial. The record shows that DPSS had contact information for several relatives who qualified as extended family members, including maternal grandmother, maternal aunt, and paternal grandmother. The agency even contacted paternal grandmother to ask about placement. The extended family members thus were readily available, and their responses would "shed meaningful light on whether

8

there is reason to believe" that Ricky and Jayden are Indian children, whatever the outcome of the inquiry may be. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

We therefore must conditionally reverse the order terminating parental rights. At a minimum, DPSS must contact the known extended family members to make the initial ICWA inquiry, and the juvenile court must determine whether DPSS has satisfied its ICWA duties and whether ICWA applies to the children.

## II. *Motion to Dismiss the Appeal as Moot*

In an effort to avoid a conditional reversal, DPSS has filed a motion to dismiss Mother's appeal as moot on the basis of postjudgment evidence. For several reasons, we deny DPSS's request to consider the postjudgment evidence, and we deny the motion to dismiss.

The postjudgment evidence consists of two social worker declarations. In relevant part, the first declaration states that the social worker spoke to maternal grandmother and maternal aunt in June 2022, and both of them reported no Indian ancestry. The social worker also contacted paternal grandmother and paternal great-grandmother. Both of them reported that paternal great-great-grandparents, who were born in Nayarit, Mexico, had said the family was "'part Indian.'" But paternal grandmother and paternal great-grandmother could not remember which tribe. The social worker asked if it might be the Cora tribe, and paternal great-grandmother thought that was correct. The social worker

9

believes the Cora is "an indigenous ethnic group from the Mexican state of Nayarit."**2**

The second declaration states that the social worker attempted to contact maternal great-aunt at two different phone numbers in June 2022, but maternal great-aunt did not respond to the social worker's voicemail message.

DPSS requests that we consider the declarations under Code of Civil Procedure section 909. In the alternative, it requests that we take judicial notice of the declarations or augment the record with the declarations. DPSS argues that the declarations show the issue on appeal is moot—it has completed the required inquiries, and the responses demonstrate that Ricky and Jayden are not Indian children.

First, we decline to take judicial notice of the declarations. DPSS relies on Evidence Code section 452, which permits us to take judicial notice of court records. (Evid. Code, § 452, subd. (d).) But there is no evidence that the declarations were filed in the juvenile court or that they are otherwise records of the juvenile court. And even if they qualified as court records, we could take judicial notice of the existence of the declarations but not the truth of the matters asserted in the declarations. (*In re M.B.* (2022) 80 Cal.App.5th 617, 626-627.) The substance of the declarations thus would not be before us.

Second, we decline to augment the record with the declarations. We may augment the record to include (1) documents filed or lodged in the superior court or (2) a certified

---

**2** ICWA defines an Indian tribe "so as to include only federally recognized Indian tribes." (*In re Jonathon S.* (2005) 129 Cal.App.4th 334, 338, citing 25 U.S.C. § 1903(8).) The Cora tribe is not on the list of federally recognized tribes published by the Department of the Interior. (87 Fed. Reg. 4636-4641.)

transcript, or an agreed or settled statement, of oral proceedings in the superior court. (Cal. Rules of Court, rule 8.155(a)(1).) Again, there is no evidence that the declarations were filed or lodged in the juvenile court. "Augmentation does not function to supplement the record with materials not before the trial court." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; *DeYoung v. Del Mar Thoroughbred Club* (1984) 159 Cal.App.3d 858, 863 [document not presented to the trial court fell outside the scope of the augmentation rule and could not be considered by the appellate court].)

Third, we deny DPSS's request to consider the declarations under Code of Civil Procedure section 909. That section "permits an appellate court to take additional evidence and make independent factual findings on appeal. Such postjudgment evidence may, in appropriate cases, be considered to determine whether an issue on appeal is moot."[3] (*In re M.B.*, *supra*, 80 Cal.App.5th at p. 627, fn. omitted, citing *In re Josiah Z.* (2005) 36 Cal.4th 664, 676.)

In this case, however, the juvenile court should consider in the first instance whether DPSS discharged its duties under ICWA and related state law. (*In re E.V.* (2022) 80 Cal.App.5th 691, 700; *In re Jennifer A.* (2002) 103 Cal.App.4th 692, 703

---

[3] The statute states: "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make factual determinations contrary to or in addition to those made by the trial court. . . . The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require." (Code Civ. Proc., § 909.)

11

[denying the agency's motion to take additional evidence consisting of ICWA notices, because "[m]aking the appellate court the trier of fact is not the solution"].) In her opposition to the motion to dismiss, Mother reserves the right to cross-examine the social worker declarants, present witnesses of her own, and otherwise question the accuracy of the statements in the declarations. The juvenile court should determine whether there is reason to believe or know that the children are Indian children, after Mother has had the opportunity to challenge DPSS's evidence. Further, the juvenile court should determine whether DPSS has contacted all readily available extended family members and otherwise fully discharged its ICWA duties, in light of any new evidence.

DPSS relies on *In re Allison B.* (2022) 79 Cal.App.5th 214 (*Allison B.*), a case in which the appellate court considered postjudgment evidence under Code of Civil Procedure section 909. (*Id.* at p. 219.) The child welfare agency moved to dismiss the appeal and offered "last minute information for the court (LMI)," a document that the agency had recently filed in the juvenile court. (*Id.* at p. 217.) According to the LMI, the agency had interviewed available extended family members, and they denied any Indian ancestry. (*Id.* at pp. 217-218.) In supplemental briefing on appeal, the parent stated that she had no information to either contest or affirm the truth of the statements in the LMI. (*Id.* at p. 218.) The agency also offered postjudgment minute orders showing that the juvenile court had reviewed the LMI and had found that there was no reason to believe or know that the children were Indian children. (*Ibid.*) The parent's supplemental brief stated that she did not contest the findings in the minute orders. (*Ibid.*) At the same time, the parent argued that the appellate court could not rely on the findings, because the

12

juvenile court made them at a "'Non-Appearance Progress Report Hearing'" where she was not represented by counsel, presumably because her parental rights had been terminated. (*Id*. at pp. 218, 220.)

The *Allison B.* court considered the LMI as additional evidence under Code of Civil Procedure section 909, but it declined to do the same with the minute orders. (*Allison B.*, *supra*, 79 Cal.App.5th at p. 219 & fn. 2.) It took judicial notice of the minute orders, however. (*Id.* at p. 217.) On the basis of the LMI, the court held that any prior failure to inquire of the extended family members was harmless, and it dismissed the appeal as moot. (*Id.* at pp. 219-220.)

*Allison B.* is distinguishable and thus does not persuade us to consider DPSS's postjudgment evidence. The juvenile court in that case considered the postjudgment evidence (the LMI) in the first instance and made ICWA findings. That is what should occur in the case at hand, except that to the extent the juvenile court in *Allison B.* failed to give the parent an opportunity to challenge the evidence, the court here must do so.

Moreover, although the juvenile court should make ICWA findings in the first instance, we disapprove of the agency's approach in *Allison B.*—that is, presenting new ICWA evidence to the juvenile court while the order terminating parental rights is on appeal. "[S]ection 366.26, subdivision (i)(1), expressly deprives the juvenile court of jurisdiction to modify or revoke an order terminating parental rights once it is final as to that court." (*In re M.B.*, *supra*, 80 Cal.App.5th at p. 627, fn. omitted.) But "'belated remedial ICWA efforts . . . [are] in substance a collateral attack on the termination order.'" (*Id.* at p. 628.) If the new evidence of ICWA efforts undermines the prior

13

finding that ICWA does not apply, the juvenile court is confronted with a dilemma: The termination order is invalid because it incorporates an erroneous ICWA finding, yet the juvenile court lacks jurisdiction to vacate the termination order to permit ICWA compliance. (*Id.* at pp. 628-629.) To avoid such a dilemma and still expedite the appellate process, the parties should stipulate to a conditional ICWA reversal and an immediate issuance of the remittitur.[4] (*Id.* at p. 629; *In re K.M.* (2015) 242 Cal.App.4th 450, 458.) That way, the juvenile court may make ICWA findings on the basis of the new evidence, and there is no question about its jurisdiction.

For all of these reasons, we decline to consider the declarations under any of DPSS's theories—judicial notice, augmentation, or Code of Civil Procedure section 909. The declarations are not properly before us, so there is no basis to dismiss the appeal as moot.

## DISPOSITION

DPSS's motion to dismiss the appeal is denied. The order terminating parental rights is conditionally reversed. On remand, the juvenile court shall order DPSS to comply with the duty of initial inquiry (§ 224.2, subd. (b)) and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the pertinent tribes (25 U.S.C. § 1912(a); § 224.3). If the court determines that ICWA does not apply—

---

**4** After we issued our tentative opinion in this matter, Mother waived oral argument and requested that we issue the remittitur immediately with our final opinion. DPSS also waived oral argument and filed a letter stating that it did not oppose Mother's request for immediate issuance of the remittitur. Our disposition therefore directs that the remittitur issue immediately. (Cal. Rules of Court, rule 8.272(c)(1) [appellate court may direct immediate issuance of remittitur "on the parties' stipulation"].)

14

either (1) because DPSS has conducted a sufficient inquiry, and there is no reason to believe Ricky and Jayden are Indian children, or (2) because DPSS's inquiry reveals reason to know they are Indian children, notice was sent to the pertinent tribes, and the tribes' responses show that they are not Indian children—then the court shall reinstate the order terminating parental rights. If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law. The remittitur shall issue immediately pursuant to the parties' stipulation. (Cal. Rules of Court, rule 8.272(c)(1).)

CERTIFIED FOR PUBLICATION

MENETREZ
J.

We concur:

McKINSTER
Acting P. J.
SLOUGH
J.

15