Filed 11/15/22  In re Anirah G. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ANIRAH G., a Person Coming Under the Juvenile Court Law. | B320169 (Los Angeles County Super. Ct. No. 20CCJP00476) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| VIVIAN G. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, D. Zeke Zeidler, Judge.  Conditionally affirmed and remanded with directions.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant Vivian G.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant Arthur J.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Vivian G. (Mother) and Arthur J. (Father) appeal from the juvenile court's order terminating their parental rights over two-year-old Anirah G. pursuant to Welfare and Institutions Code section 366.26.[1] Mother's and Father's sole contention on appeal is that the Los Angeles County Department of Children and Family Services (the Department) and the juvenile court failed to comply with the inquiry and notice provisions of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) and related California law.

Mother and Father contend the Department failed to inquire of maternal and paternal extended family members about Anirah's possible Indian ancestry. The Department responds that the appeals are now moot because while the appeals were pending, a social worker interviewed three extended family members who denied Indian ancestry, and the juvenile court found ICWA did not apply based on that information. The postjudgment evidence of the Department's belated ICWA inquiry does not moot the appeals. We conditionally affirm and

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

2

remand for the juvenile court and the Department to comply with the inquiry and notice provisions of ICWA and California law.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Dependency Proceedings*

Shortly after Anirah's birth, the Department filed a dependency petition in January 2020 alleging Mother's mental and emotional problems, including diagnoses of bipolar disorder, major depressive disorder, and an unspecified mood disorder, rendered her incapable of providing regular care and supervision of Anirah.  Anirah was detained and placed with an unrelated extended family member.  On March 11, 2020 Mother pleaded no contest to the allegations in the petition, and the juvenile court sustained an amended petition under section 300, subdivision (b)(1).  The court declared Anirah a dependent of the court and removed her from Mother's physical custody.  The court found Father was the alleged father of Anirah, and it ordered the Department to locate and provide notice to Father.  On June 23, 2020 Father made his first appearance at an arraignment hearing and requested paternity testing.  Father told the social worker he had frequent contact with paternal great-aunt Diane D. and he could receive mail at her home.  On December 8, 2020 the court found Father was Anirah's biological father.

At the 18-month review hearing on July 22, 2021, the juvenile court found Mother was in substantial compliance with her case plan and released Anirah to her.  On September 17 the Department filed a subsequent petition (§ 342) and a supplemental petition (§ 387) alleging Mother allowed her boyfriend Clarence T., who abused marijuana, to have unlimited

3

access to Anirah; Mother and Clarence engaged in domestic violence; and Mother failed to comply with court-ordered mental health counseling. On December 1, 2021 the juvenile court sustained the subsequent and supplemental petitions and removed Anirah from Mother's physical custody. The court terminated reunification services and set a selection and implementation hearing (§ 366.26) for April 26, 2022.

At the April 26, 2022 selection and implementation hearing, the juvenile court found by clear and convincing evidence Anirah was adoptable and no exception to termination of parental rights applied. The court rejected Mother's and Father's arguments that the beneficial parental relationship exception (§ 366.26, subd. (c)(1)(B)(i)) applied. The court terminated Mother's and Father's parental rights.

Father filed his notice of appeal on April 26, 2022. Mother filed her notice of appeal on May 17, 2022.

B.    *ICWA Inquiry and Findings*

At the January 28, 2020 detention hearing, Mother filed a parental notification of Indian status form (Judicial Council form ICWA-020) on which she checked the box stating, "I have no Indian ancestry as far as I know." The juvenile court asked the maternal aunt and maternal cousin, who were both present at the hearing, whether their family had Indian ancestry. Both responded "no." The court then stated, "The court does not have reason to know or believe the child is an Indian child as defined by the Indian Child Welfare Act. The Indian Child Welfare Act does not apply. The court will inquire further of the father if and when he appears." On August 16, 2021 Mother again denied she or Anirah had Indian ancestry.

4

On June 23, 2020 Father's counsel filed a parental notification of Indian status form on Father's behalf on which he checked the box stating, "None of the above apply," referring to boxes indicating, among other things, the parent or child "is or may be" a member of or eligible for membership in a federally recognized Indian tribe, and one or more of the parent's grandparents, great-grandparents, "or other lineal ancestors is or was a member of a federally recognized tribe." On February 7, 2022 Father again denied any knowledge of Indian ancestry.

The Department did not interview any maternal or paternal relatives with respect to Anirah's possible Indian ancestry prior to the selection and implementation hearing. Nor did the court make a finding with respect to whether ICWA applied as to Father. Further, the court did not make a finding on ICWA as to either parent at the selection and implementation hearing.

C.    *Post-appeal ICWA Inquiry*

As discussed, in April and May 2022 Mother and Father appealed the juvenile court's April 26, 2022 order terminating parental rights. According to the July 11, 2022 last minute information for the court, on June 7 a social worker contacted the maternal great-grandmother, Shirley B., who denied Indian ancestry, stating, "'I'm a black woman, and I speak English.'" On July 6 the social worker contacted paternal grandmother Ms. S. and maternal great-aunt Monique B., both of whom denied any Indian ancestry. Ms. S. also reported the paternal grandfather had died in 2018, and Ms. S. did not know of any Indian ancestry on his side of the family. The July 22, 2022 minute order indicates the juvenile court considered the July 11, 2022 last

minute information report and found ICWA inquiry was complete, the court did not have a reason to know Anirah was an Indian child, and ICWA did not apply.

On September 16, 2022 the Department moved for judicial notice under Evidence Code sections 452 and 459 of the July 11, 2022 last minute information for the court and the juvenile court's July 22, 2022 order finding ICWA did not apply. The Department also requested we consider the additional evidence under Code of Civil Procedure section 909.

## DISCUSSION

A.   *Inquiry and Notice Requirements under ICWA and California Law*

ICWA provides as to dependency proceedings, "where the court knows or has reason to know that an Indian child is involved, the party seeking . . . termination of parental rights to . . . an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 5*; In re Antonio R.* (2022) 76 Cal.App.5th 421, 428 (*Antonio R.*); *In re T.G.* (2020) 58 Cal.App.5th 275, 288.) California law also requires notice to the Indian tribe and the parent, legal guardian, or Indian custodian if the court or the Department "knows or has reason to know" the proceeding concerns an Indian child. (§ 224.3, subd. (a); see *Antonio R.*, at p. 429; *In re T.G.*, at p. 288; Cal. Rules of Court, rule 5.481(c)(1) [notice is required "[i]f it is known or there is reason to know an Indian child is involved in a proceeding listed in rule 5.480,"

6

which includes dependency cases filed under section 300].)  The notice requirement is at the heart of ICWA because it "enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding."  (*In re Isaiah W.*, at p. 5; accord, *Antonio R.*, at p. 428; *In re T.G.*, at p. 288; see 25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3, subd. (d).)

The juvenile court and the Department "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child."  (§ 224.2, subd. (a); see *In re Isaiah W., supra,* 1 Cal.5th at p. 9; *In re H.V.* (2022) 75 Cal.App.5th 433, 437.)  "The duty to inquire begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child.  (§ 224.2, subds. (a)-(c))."  (*In re T.G., supra,* 58 Cal.App.5th at p. 290; accord, *In re J.C.* (2022) 77 Cal.App.5th 70, 77; *In re H.V.,* at p. 437.)

Section 224.2, subdivision (b), effective January 1, 2019, imposes on the Department a duty to inquire whether a child in the Department's temporary custody is an Indian child, which "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ."  (See Cal. Rules of Court, rule 5.481(a)(1) [the Department "must ask . . . extended family members . . . whether the child is or may be an Indian child"]; *In re D.F.* (2020) 55 Cal.App.5th 558, 566; *In re Y.W.* (2021) 70 Cal.App.5th 542, 551-552.)  Under ICWA, the term "extended family member" is

7

"defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin or stepparent." (25 U.S.C. § 1903(2); see Welf. & Inst. Code, § 224.1, subd. (c) ["As used in connection with an Indian child custody proceeding, the terms 'extended family member' and 'parent' shall be defined as provided in Section 1903 of the federal Indian Child Welfare Act."].)

"The duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or members of the parents' families." (*Antonio R., supra*, 76 Cal.App.5th at p. 430; see *In re K.R.* (2018) 20 Cal.App.5th 701, 706 ["The court and the agency must act upon information received from any source, not just the parent [citations], and the parent's failure to object in the juvenile court to deficiencies in the investigation or noticing does not preclude the parent from raising the issue for the first time on appeal . . . ."].)

"In addition, section 224.2, subdivision (e), imposes a duty of further inquiry regarding the possible Indian status of the child '[i]f the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine there is reason to know that the child is an Indian child.'" (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 316-317; accord, *In re J.C., supra*, 77 Cal.App.5th at p. 78, see Cal. Rules of Court, rule 5.481(a)(4).) Further inquiry includes, but is not limited to, "interviewing, as soon as practicable, extended family members to gather the

biographical information required by section 224.3, subdivision (a)(5), to be included in ICWA notices, contacting the Bureau of Indian Affairs and contacting 'the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.'" (*Rylei S.*, at p. 317, quoting § 224.2, subd. (e)(2).)

B.    *The Post-appeal Evidence Does Not Moot Mother's and Father's Appeals*

The Department argues in its respondent's brief that we should consider its post-appeal efforts to comply with ICWA and the juvenile court's finding that ICWA does not apply, which moot the current appeals. We grant the Department's motion for judicial notice of the July 11, 2022 last minute information report and July 22, 2022 minute order as to the existence of the documents, but not their contents. (*In re Vicks* (2013) 56 Cal.4th 274, 314 ["'while courts are free to take judicial notice of the *existence* of each document in a court file, including the truth of results reached, they may not take judicial notice of the truth of hearsay statements in decisions and court files'"]; *In re M.B.* (2022) 80 Cal.App.5th 617, 626-627 (*M.B.*); *In re K.M.* (2015) 242 Cal.App.4th 450, 456 (*K.M.*) ["judicial notice may be taken of the *existence* of court documents but not the truth of factual findings made in other court rulings"].)

However, under Code of Civil Procedure section 909, an appellate court may take additional evidence and make factual

9

determinations on appeal.[2]  In appropriate cases, postjudgment evidence may "be considered to determine whether an issue on appeal is moot." (*M.B., supra*, 80 Cal.App.5th at p. 627; accord, *In re Josiah Z.* (2005) 36 Cal.4th 664, 676 [postjudgment evidence may be considered in motions to dismiss an appeal because "the beneficial consequence of motions to dismiss, where granted, will be to 'expedit[e] the proceedings and promot[e] the finality of the juvenile court's orders and judgment'"]; *K.M., supra*, 242 Cal.App.4th at p. 456 [granting motion to take additional evidence under Code of Civil Procedure section 909 of postjudgment minute orders regarding ICWA].)

Even if we consider the contents of the July 11 and July 22 documents under Code of Civil Procedure section 909, the postjudgment evidence does not moot Mother's and Father's appeals.  As we explained in *M.B.*, section 366.26, subdivision (i)(1),[3] "expressly deprives the juvenile court of

---

[2]    Code of Civil Procedure section 909 provides, "In all cases where trial by jury is not a matter of right . . . , the reviewing court may make factual determinations contrary to or in addition to those made by the trial court. . . .  The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal."

[3]    As applicable here, section 366.26, subdivision (i)(1), provides, "Any order of the court permanently terminating parental rights under this section shall be conclusive and binding . . . .  After making the order, the juvenile court shall have no power to set aside, change, or modify it."

jurisdiction to modify or revoke an order terminating parental rights once it is final as to that court." (*M.B., supra,* 80 Cal.App.5th at p. 627; accord, *In re Ricky R.* (2022) 82 Cal.App.5th 671, 683 [postjudgment declarations from social worker regarding additional ICWA investigation did not render appeal moot because section 366.26, subdivision (i)(1), deprives juvenile court of jurisdiction to modify or revoke order terminating parental rights]; *K.M., supra,* 242 Cal.App.4th at p. 458 ["[T]he juvenile court lacked jurisdiction to consider [the social services agency's] belated remedial ICWA efforts because it was in substance a collateral attack on the termination order."].) Thus, the Department "cannot remedy a defective ICWA investigation by conducting further interviews while the termination order is being reviewed on appeal." (*M.B.,* at pp. 627-628; accord, *K.M.,* at p. 458; but see *In re Allison B.* (2022) 79 Cal.App.5th 214, 219-220 [dismissing mother's appeal as moot based on ICWA inquiry of maternal grandparents and paternal grandmother three months after mother appealed].)

Here, as in *M.B.,* the Department conducted interviews of three maternal and paternal relatives to correct its earlier inadequate ICWA investigation. (See *M.B., supra,* 80 Cal.5th at p. 629.) In *M.B.,* we rejected the Department's argument that the belated ICWA inquiry rendered the appeal moot, concluding the juvenile court lacked jurisdiction to vacate its order terminating parental rights if further ICWA compliance was required. (*M.B.,* at p. 629.) The Department attempts to distinguish *M.B.* on the basis the mother there stated she had Indian ancestry and therefore the Department's deficient inquiry could have resulted in inadequate notice to the Indian tribe that needed to be corrected, whereas here both parents and the two maternal

11

relatives who were present at the detention hearing denied any Indian ancestry. The Department's argument misses the point. Although Mother and Father and the two maternal relatives denied Indian ancestry, the requirement that the Department inquire of extended family members, who may have greater knowledge of Anirah's possible Indian ancestry, is designed to elicit information that could still uncover that the child is an Indian child. (See *Antonio R., supra*, 76 Cal.App.5th at p. 432 ["parents may lack knowledge of a child's Indian ancestry even where the child's extended family members possess strong evidence of the child's possible Indian ancestry"].) We now know from the postjudgment evidence that there were at least two additional maternal relatives and one paternal relative (and possibly more) that had not been interviewed as to Anirah's possible Indian ancestry. Had the additional ICWA inquiry yielded information that caused the juvenile court to have a reason to believe Anirah was an Indian child, the court would have lacked jurisdiction to modify the order terminating parental rights. (*M.B., supra*, 80 Cal.App.5th at p. 627; § 366.26, subd. (i)(1).)

As we observed in *M.B.*, "Rather than attempt to moot [the parent's] appeal by belatedly conducting the investigation required by section 224.2, the Department's proper course of action was to stipulate to a conditional reversal with directions for full compliance with the inquiry and notice provisions of ICWA and related California law—a procedure the Department has used in many ICWA appeals pending before us." (*M.B., supra*, 80 Cal.App.5th at p. 629.) The Department here as well opted to attempt to moot the appeals instead of stipulating to a

conditional reversal, which would have more expeditiously addressed the ICWA deficiencies.

C.      *The Juvenile Court Failed To Ensure the Department Satisfied Its Duty of Inquiry*

By conducting additional interviews of three of Anirah's extended family members after Mother and Father appealed, the Department implicitly acknowledges it failed to conduct an adequate inquiry into Anirah's possible Indian ancestry before the juvenile court terminated Mother's and Father's parental rights.  (See *M.B., supra*, 80 Cal.App.5th at p. 629.)  Indeed, the Department does not contend in its respondent's brief that its initial ICWA investigation was adequate.  Moreover, even the Department's postjudgment attempt to remedy its failure to comply with its ICWA obligations fell short.  For example, the Department did not inquire of paternal great-aunt Diane T., with whom Father had contact.  And at no time did the Department or juvenile court ensure that inquiry was made of all ascertainable extended family members.

The juvenile court therefore erred in finding ICWA did not apply to the proceedings without ensuring the Department satisfied its duty of inquiry under section 224.2, subdivision (b). (*In re J.C., supra*, 77 Cal.App.5th at p. 74 [the court's finding ICWA did not apply was not supported by substantial evidence where the court "failed to ensure the Department fulfilled its duty of inquiry under section 224.2, subdivision (b)"]; *Antonio R., supra*, 76 Cal.App.5th at p. 432 [court's finding ICWA did not apply was erroneous where Department failed to inquire of child's extended family members about possible Indian ancestry,

13

and court failed to ensure Department satisfied its duty of initial inquiry].)

## DISPOSITION

The April 26, 2022 order terminating Mother's and Father's parental rights is conditionally affirmed.  We remand to the juvenile court for the Department and the court to comply with the inquiry and notice provisions of ICWA and related California law.

FEUER, J.

We concur:

PERLUSS, P. J.

SEGAL, J.