Filed 10/27/23  R.C. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| R.C., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF FRESNO COUNTY, <br><br> Respondent; <br><br> FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Real Party in Interest. | F086736 <br><br> (Super. Ct. No. 21CEJ300222-2) <br><br><br> **OPINION** |

### THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Mary Dolas, Judge.

R.C., in pro. per., for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]     Before Detjen, Acting P. J., Peña, J. and Meehan, J.

Petitioner R.C. (father), in propria persona, seeks an extraordinary writ (Cal. Rules of Court, rules 8.450–8.452)[1] from the juvenile court's orders issued at a disposition hearing finding detriment to return, bypassing him for reunification services under Welfare and Institutions Code section 361.5, subdivision (b)(12)[2] (violent felony), and setting a section 366.26 hearing as to his son Josiah C. (born December 2020). E.L. (mother) is deceased. Father seeks a writ directing the court to vacate the order setting a section 366.26 hearing and provide him with reunification services. We deny the petition.

## FACTUAL AND PROCEDURAL SUMMARY[3]

### A. Petition and Detention

On May 5, 2023, law enforcement placed a section 300 hold on Josiah after mother was found deceased in her bedroom. Father's whereabouts were unknown. Josiah was placed with maternal grandparents. Thereafter, the Fresno County Department of Social Services (department) filed a petition pursuant to section 300, subdivision (g), alleging mother left Josiah without any provision for support or care. The department immediately submitted a parent search for father.

On May 10, 2023, the juvenile court held a detention hearing. Father's whereabouts were still unknown. The court found a prima facie case had been established, ordered Josiah detained, ordered father to have reasonable supervised visitation, and gave the department discretion to schedule visits upon father making contact with the department.

---

[1]     All rule references are to the California Rules of Court.

[2]     All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[3]     Josiah's half sibling is part of the same dependency proceedings, but is not part of this appeal; therefore, we omit facts related to the half sibling.

**B.      Jurisdiction and Disposition**

**1.      Reports**

In its jurisdiction and disposition report, the department recommended the allegation in the petition be found true and that father not be provided placement or reunification services. Father's whereabouts were still unknown. The report detailed that in a prior dependency case involving Josiah from 2021, father had been ordered to participate in reunification services, but dependency was terminated and mother was granted sole legal and physical custody. The report also contained father's lengthy criminal history. He had several felonies, including a robbery. The department concluded there would be a substantial risk to Josiah's physical health, safety, protection, and emotional well-being if he were placed in father's care, and there was no reasonable means by which he could be protected if placed with him. The department had been unable to assess him due to his whereabouts being unknown. Maternal grandmother had reported father was violent and used to physically abuse mother and had many felonies. Maternal grandmother had a five-year restraining order against him. She said Josiah did not have a relationship with him.

In an addendum report, the department again recommended the allegations in the petition be found true and that father not be provided placement pursuant to section 361.2, subdivision (a). Additionally, it recommended father be bypassed for reunification services pursuant to section 361.5, subdivisions (b)(10) (failure to reunify) and (12) (violent felony). A family reunification panel met to determine the appropriateness of offering father reunification services. Father confirmed he had failed to reunify with Josiah in the prior dependency case. He said he did not participate in services in the prior case because he had already been doing services through parole and "was not going to do double services." He reported he had participated in domestic violence services and drug treatment, but did not provide the department with

3.

documentation showing completion of such services. Additionally, although he had been ordered supervised visits when mother was awarded custody, he did not visit Josiah. He claimed he did not know mother's whereabouts, but later stated she always called him to ask for money. The department noted it was reported (by an unspecified source) that father had not wanted to pay the visitation agency fees to visit Josiah. Father admitted he had not seen Josiah in over a year. The panel determined father met the bypass criteria under section 361.5, subdivisions (b)(10) and (12).

Even though father met the bypass criteria, the department was still required to consider whether it would be in Josiah's best interest for father to receive reunification services. The department considered four factors: (1) father's current efforts and fitness, and his history; (2) the gravity of the problem that led to the dependency; (3) the strength of relative bonds between Josiah, father, and maternal grandparents; and (4) Josiah's need for stability. Overall, father had not ameliorated the problems that led to the initial removal, had not participated in services, and did not have a relationship with Josiah. Due to Josiah's young age, he required a safe, stable, and sober care provider. It did not appear father could meet those needs as he had an extensive criminal history, which included violent crimes, and had been in and out of prison. Maternal grandparents, on the other hand, had been meeting Josiah's needs. The panel concluded it would not be in Josiah's best interest for father to receive services.

### 2. Contested Hearing

On June 14, 2023, the juvenile court held a combined jurisdiction and disposition hearing where father made his first appearance, and he was appointed counsel. The hearing was continued.

On July 19, 2023, the juvenile court held a continued hearing, but father did not appear. His attorney requested to set the hearing for contest on the basis that father

4.

believed he had done services through parole, including parenting and domestic violence services. The hearing was set for contest.

On July 31, 2023, the juvenile court held a contested hearing, but only disposition was being contested. Father was present. The court found the allegation in the petition true and proceeded to disposition.

### a. Father's Testimony

Father testified he had been previously offered reunification services in February 2022, but at that time he was in engaged in other services in Alameda County, including drug treatment, domestic violence services, and anger management services. He said he completed a 52-week domestic violence program, which he believed was offered through the Alameda County Probation Department. He said he learned a lot though the domestic violence program, but learned to maintain his temper through Jesus Christ. He also attended a 12-week "Open Path" family relationship course. There, he learned that what you do in front of a child affects them in various ways. When he was offered reunification services in the prior case, he was enrolled in a 1500-hour barbering and cosmetology program outside of Fresno County. He said he could not participate in services through Fresno County because he was already doing services elsewhere and attending the barbering program. He said he was also drug testing often and driving from San Jose to visit Josiah in Fresno. He claimed he attended visits regularly up until mother obtained custody. He did not continue visiting Josiah afterwards because he did not know mother's whereabouts. He had not seen Josiah since the prior dependency case had been dismissed and mother obtained custody. However, when Josiah was born, he had him all of the time. He described their relationship as "intimate" and "spiritual." He said Josiah knew he was his dad and he loved Josiah.

Father further testified that the most recent criminal matter he was involved in was in December 2022. He had been working since August 2022 and had an apartment where

5.

he lived alone and would be able to provide Josiah a safe and stable place to live. Father admitted he had a conviction for robbery. However, he felt he had truly overcome his past.

On cross-examination, father stated he also completed a substance abuse treatment program. He went back and forth providing conflicting testimony as to whether he was ordered to participate in services in the prior case, denying he was ever court-ordered to do services. He also acknowledged that in the prior case he never progressed past supervised visits. Currently, he was participating in supervised visits with Josiah. The last time he had unsupervised contact with him was when he was six months old.

The juvenile court admitted into evidence a parenting certificate (Exhibit A) and probation report from Alameda County (Exhibit B).

### b. Ruling

On August 16, 2023, the juvenile court issued its ruling, finding there was clear and convincing evidence that placement of Josiah with father would be detrimental to his safety, protection, and physical and emotional well-being because there had been a prior finding of detriment in the earlier dependency case. The court noted that father had previously been ordered to participate in reunification services, but failed to participate. Father's services were terminated and mother was granted sole legal and physical custody. Additionally, there was an active restraining order against father. Father presented no credible evidence indicating that the issues from the prior dependency case had been addressed. He also admitted he had not visited or had contact with Josiah in over a year, even though he was permitted to have supervised visits.

The juvenile court further found there was clear and convincing evidence that the bypass provision under section 361.5, subdivision (b)(12) (violent felony) applied, and that providing father with reunification services would not be in Josiah's best interest.

The court did not find that father met the bypass criteria under section 361.5, subdivision (b)(10) (failure to reunify).

On August 16, 2023, father filed a notice of intent to file a writ petition.

**DISCUSSION**

**I.      Adequacy of Writ Petition**

As a preliminary matter, we address the adequacy of father's petition.  Rule 8.452 sets forth the content requirements for an extraordinary writ petition.  "The petition must be liberally construed and must include:  [¶] (A) The identities of the parties; [¶] (B) The date on which the superior court made the order setting the hearing; [¶] (C) The date on which the hearing is scheduled to be held; [¶] (D) A summary of the grounds of the petition; and [¶] (E) The relief requested."  (Rule 8.452(a)(1)(A)–(E).)  Additionally, "[t]he petition must be verified," and it "must be accompanied by a memorandum." (Rule 8.452(a)(2)–(3).)  In keeping with rule 8.452(a)(1), we liberally construe a writ petition in favor of its adequacy where possible, recognizing that a parent representing him or herself is not trained in the law.  However, the petitioner must at least articulate a claim of error and support it by citations to the record.  Failure to do so renders the petition inadequate in its content and the reviewing court need not independently review the record for possible error.  (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Father's petition is technically inadequate as he did not specifically identify the legal error committed or develop arguments by citing to the record and legal authority. Instead, in the area of the "Petition for Extraordinary Writ" (JV-825) form designated for identifying the grounds on which the order was erroneous, father wrote the following:  "I was not given a fair trial.  This case was hidden from me [a] majority of the time.  I have no [involvement] with the opening of [the] CPS case.  There was no supporting evidence of me being an unfit father this present day.  This case [began] because mother and care provider were involved in a [d]omestic [v]iolence [incident]."  Nevertheless, where

7.

possible, we liberally construe a petition in favor of finding it adequate for review. (Rule 8.452(a)(1).) We do so in this case and construe father's petition as asserting the juvenile court erred in finding it would be detrimental to place Josiah with him and bypassing him for reunification services under section 361.5, subdivision (b)(12).

## II. Detriment

"When a juvenile court orders removal of a child from the custodial parent, it must determine whether there is a noncustodial parent who wants to assume custody. If so, the court must 'place the child with the [noncustodial] parent unless it finds that [such] placement … would be detrimental to the safety, protection, or physical or emotional well-being of the child.' (§ 361.2, subd. (a).) A finding of detriment must be made by clear and convincing evidence. [Citation.] We review the juvenile court's finding of detriment for substantial evidence, 'bearing in mind the heightened burden of proof' in the trial court." (*In re Solomon B.* (2021) 71 Cal.App.5th 69, 74–75.)

In the present case, substantial evidence supports the juvenile court's detriment finding. Father had previously failed to participate in reunification services, thereby failing to address the issues leading to Josiah's initial removal, which included allegations of domestic violence with respect to father. The only evidence father submitted showing he participated in services was a parenting certificate, but it is unclear what that parenting class consisted of. Father had a long history of engaging in domestic violence as evidenced by at least three domestic violence convictions with the most recent occurring in December 2022. There was also an active restraining order against father protecting maternal grandmother, maternal grandfather, maternal uncle, and Josiah's half sister that expires in 2025. As the court noted, father failed to present evidence showing he addressed the issues from the prior dependency case. Accordingly, we find no error.

## III. Bypass of Reunification Services

"Section 361.5, subdivision (b) contains several reunification 'bypass provisions' permitting (or, in some cases, requiring) a court to deny a parent reunification services. [Citations.]  Once the juvenile court determines by clear and convincing evidence that a case presents one of the situations set forth in section 361.5, subdivision (b), 'the general rule favoring reunification is replaced by a legislative assumption that offering [reunification] services would be an unwise use of governmental resources.' " (*In re Christopher L.* (2020) 56 Cal.App.5th 1172, 1189.)

The bypass provision at issue here—section 361.5, subdivision (b)(12)—applies when the parent "has been convicted of a violent felony, as defined in subdivision (c) of Section 667.5 of the Penal Code." (§ 361.5, subdivision (b)(12).)  Here, father was convicted of a robbery, which is considered a violent felony within the meaning of Penal Code section 667.5.  "The court *shall* not order reunification for a parent … described in [section 361.5, subdivision (b)(12)] unless the court finds by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c)(2), italics added.)  " 'The concept of a child's best interest "is an elusive guideline that belies rigid definition.  Its purpose is to maximize a child's opportunity to develop into a stable, well-adjusted adult." [Citation.]' " (*In re William B.* (2008) 163 Cal.App.4th 1220, 1227.)  "Nevertheless, precedent supplies certain relevant considerations when making a best interests determination.  For instance, '[t]o determine whether reunification is in the child's best interest, the court considers the parent's current efforts, fitness, and history; the seriousness of the problem that led to the dependency; the strength of the parent-child and caretaker-child bonds; and the child's need for stability and continuity." (*Jennifer S. v. Superior Ct.* (2017) 15 Cal.App.5th 1113, 1124.)  "It is the parent's burden to prove that the minor would benefit from the provision of court-ordered services." (*Ibid.*)

"We review a juvenile court's best interest determination in this context for abuse of discretion." (*Id*. at pp. 1124–1125.)

Given Josiah's tender age and need for stability, father's limited bond with him, father's history of going in and out of prison, and father's extensive history with domestic violence, the juvenile court did not abuse its discretion in concluding that providing father with reunification services was not in Josiah's best interest.[4]

## **DISPOSITION**

The petition for extraordinary writ is denied. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).

---

[4]     We note father attached several documents to his writ petition that are not included in the trial court record. As a reviewing court, we cannot consider evidence that is not part of the record. (*In re K.M.* (2015) 242 Cal.App.4th 450, 456 [" ' "an appellate court will consider only matters which were part of the record at the time the judgment was entered" ' "].)

10.