Filed 9/26/24  In re A.G. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.G. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E083351 |
| Plaintiff and Respondent, | (Super.Ct.No. DPRI2300458) |
| v. | OPINION |
| E.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Dorothy McLaughlin, Judge.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Prabhath Shettigar, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant E.R. (Father) appeals from the juvenile court's jurisdictional and dispositional orders adjudicating three of his children—A.G. (a girl, born Jan. 2018), and twins So.G. and St.G. (girls, born Nov. 2020) (collectively, Minors)—dependents of the court pursuant to Welfare and Institutions Code section 300.[1] On appeal, Father contends there was insufficient evidence presented to support the jurisdictional findings to sustain the section 300 petition, specifically, that he sexually abused A.G., and the dispositional bypass orders based on the finding should be reversed.

**FACTUAL AND PROCEDURAL HISTORY**

A.     <u>DETENTION</u>[2]

On October 10, 2023, the Riverside County Department of Public Social Services (Department) received an immediate response referral for Father, P.P. (Mother)[3] and Minors.  It was reported that Father had been drinking and Mother confronted him. Father got on top of Mother and hit her on the side of the head.  He pulled Mother's right ear and caused bruising.  Father tried to break her right arm, resulting in bruising. Mother filed an emergency protective order against Father which was granted.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] At the time of the detention, Mother's other children—Father's stepchildren— G.P. (a boy, born in 2006), R.P. (a girl, born in 2007), and B.P. (a boy, born in 2011) were also living in the home.  Father stated in his opening brief that the appeal was limited to Minors.  This court found that Father's appeal did not include his stepchildren as parties to the instant appeal.

[3] Mother has not filed an appeal in this matter.

After this incident, Mother contacted the Department and reported she believed that Father had been sexually abusing A.G. After Father was taken from the house, A.G. told Mother that she was afraid to be alone with Father. A.G. told Mother, "[F]ather does 'this' to her and gestured with a finger and pointed to her vaginal area." A social worker observed a forensic interview of A.G. A.G. reported during the forensic interview that she had not been touched inappropriately by anyone in her home. She reported feeling safe with both Father and Mother. It was reported to the social worker by Detective Turner of the Riverside Police Department that A.G. had completed a medical examination earlier in the day and the findings were inconclusive because A.G.'s vaginal area was swollen. A follow-up examination would have to be performed.

Mother advised the Department that she had experienced domestic violence throughout her relationship with Father. When Father was intoxicated, he would become violent and force her to have sex with him. There had been multiple incidents of unreported domestic violence between them, and incidents where he forced her to have sex. Mother advised the social worker that A.G. was crying when she told her about Father sexually abusing her. Father had told A.G. not to tell anyone. Mother insisted she no longer wanted a relationship with Father and would not allow him back in the home. Mother was referred to domestic violence counseling. She was also provided information on how to extend the emergency protective order.

The social worker went with Detective Turner on October 12, 2023, to A.G.'s school. A.G. reported feeling safe at home with Mother. A.G. was asked if she had been touched by anyone in her private area. She initially responded, "Yes." She then changed

3

her answer to "No." She told them that she was hurt but did not state who hurt her. A.G. then denied being hurt and would not provide any further details.

On October 27, 2023, the social worker received information that a follow-up medical examination had been performed on A.G. It was reported that during the prior examination, her "hymen was noted to be erythematous and swollen." During the follow-up examination, "there was a resolution of the prior findings (injury), indicating the prior finding was evidence of penetrating vaginal trauma and confirmed sexual abuse of [A.G.]." The medical examination was not attached to the detention report.

After the examination, on November 16, 2023, the social worker and Detective Turner returned to A.G.'s school. She reported she felt safe with Mother now that Father was not living with them. She admitted she was afraid of Father. A.G. stated that Father hurt her but did not provide any further information. A.G.'s half brother, G.P., told the social worker that A.G. had reported to him the things that Father did to her. Her half sister, R.P., had heard A.G.'s accusations and did not believe that Father did anything to A.G. Half brother B.P. had heard A.G. tell G.P. about Father touching her but did not express an opinion on whether he believed it was true.

Minors were taken into custody under a protective custody warrant from Father. Minors were allowed to remain with Mother. Father and Mother took lie detector tests on December 7, 2023. After the test, Father was arrested and was housed at the Southwest Detention Center in Murrieta. Father was interviewed at the Southwest Detention Center on December 7, 2023, by the social worker. Father stated he only cleaned A.G. after she went to the bathroom and that his DNA would be in her vaginal area from cleaning her.

Father claimed he was still incarcerated because he did not have a lawyer. He had obtained an attorney and insisted he would soon be released from jail.

On December 6, 2023, Mother visited Father in jail. Father stated she had agreed to allow him to return home. He told the social worker he would no longer help "his girls" go to the restroom. He denied he ever inappropriately touched A.G. Mother insisted she went to the jail to end things with Father. She was not going to allow Father to return home. Mother had not filed anything to extend the emergency protective order to keep Father from her and Minors. Mother asked if the restraining order was necessary and whether she would be able to visit Father in jail if she obtained the order. Another visit with A.G. at her school was made by a social worker on December 7, 2023. A.G. only reported that she had not seen Father since he left their residence.

Father had been criminally charged with a violation of Penal Code section 288.7, subdivision (b), engaging in oral copulation or sexual penetration with a child under the age of 10. Father had prior convictions for driving under the influence and battery on a spouse or cohabitant. The Department concluded it was concerned about the safety of Minors based on the sexual abuse of A.G. and the forensic medical examination which was "conclusive of sexual abuse." The Department was also concerned about Mother's lack of insight into the harm caused to A.G. and the risk of letting Father back into the home. Mother and Father denied any Indian heritage.

On December 15, 2023, the Department filed section 300 petitions (petitions) for Minors against Mother and Father. It was alleged under failure to protect against Father under section 300, subdivision (b), that (b-1) Father sexually abused A.G. by digitally

5

penetrating her vagina and had been arrested on November 10, 2023, on charges of engaging in oral copulation or sexual penetration of a child under the age of 10, an examination of A.G. was conducted and a finding of vaginal trauma due to penetration was confirmed; and (b)(4) failing to protect Minors by having an unresolved history of abusing alcohol and exhibiting volatile behavior including domestic violence. It was alleged against Mother (b-2) that she neglected the health and safety of Minors based on ongoing domestic violence in the home. Mother had suffered bruising and Father had a criminal history of arrests/convictions for battery on a spouse and/or cohabitant. Mother failed to (b)(3) protect Minors by visiting Father in jail despite the sexual abuse and domestic violence allegations. It was alleged pursuant to section 300, subdivision (d), sexual abuse, that Father had sexually abused A.G. It was further alleged pursuant to section 300, subdivision (g) that Father was incarcerated, which left Minors with no provision for support. Finally, it was alleged pursuant to section 300, subdivision (j), that the abuse of A.G. posed a risk of harm to St.G. and So.G.

The detention hearing was conducted on December 18, 2023. The Department sought a temporary restraining order against Father for Minors. Father's counsel waived formal reading of the petitions and advisement of rights. Father's counsel entered a general denial of the petitions on behalf of Father. Father was named the presumed father of Minors. The juvenile court found a prima facie showing had been made that Minors came within section 300, subdivisions (b), (d), (g) and (j). Minors were detained from Father but allowed to remain with Mother. Father was denied visitation. The temporary restraining order was granted.

6

## B.    JURISDICTION/DISPOSITION REPORT

The jurisdiction/disposition report was filed on January 4, 2024.  The Department recommended that the juvenile court find the allegations in the petitions true, and that minors remain with mother on a family maintenance plan.  Father should be granted family reunification services for Minors.  He should be granted supervised visits with St.G. and So.G.; visits with A.G. would depend on a therapist's recommendation.  Father was still detained at the Southwest Detention Center and charges were still pending against him.

Two of A.G.'s half siblings still did not believe that Father had touched A.G. inappropriately.  A.G. was interviewed on December 28, 2023.  She felt safe living with Mother.  She claimed not to be scared of Father and was not sure why he was not at home.  She admitted that on occasion, Father had helped her shower and get dressed. A.G. did not answer questions posed to her about anyone touching her private parts. A.G. had heard Mother and Father "scream" at each other but she was not sure if they fought with their hands.  St.G. and So.G. were too young to be interviewed.

Mother was interviewed on December 28, 2023.  She confirmed that A.G. had told her that Father had touched her with his hand.  Mother had always taught A.G. that she was the only person who could wash her private area.  Mother stated that the domestic violence between her and Father had happened "at least twice."  On one occasion, he had slapped her in the face during an argument but she did not report it to the police.  The second incident was the domestic violence in this case.  She had not seen Father during

7

the reporting period and was not going to reconcile with him. The Department was not allowed to interview Father based on the criminal allegations.

The Department recommended that the juvenile court find the sexual abuse allegations were true by a preponderance of the evidence based on the medical examination that was reported to the social worker by email. Further, A.G. advised Mother that Father had touched her. Further, on November 16, 2023, A.G. reported feeling safe in her home with Mother now that Father was not in the home. Father was facing charges for sexual abuse of A.G. There was also sufficient evidence of domestic violence to support the allegations in the petitions. Mother reported the incidents and had bruising. Father also had a prior conviction for battery against a spouse or cohabitant. Mother had failed to protect Minors. Despite Father hitting her, forcing her to have sex, and the allegations of sexual abuse, Mother visited Father in jail. Based on the sufficient evidence that Father sexually abused A.G., there was a risk of harm to St.G. and So.G. that they would also suffer the same abuse.

The Department recommended family maintenance services to ensure Mother continued to protect Minors from Father and in order for the family to receive services, including parenting and domestic violence classes for Mother. The medical examination of A.G. was not attached to the jurisdiction/disposition report.

The Department apparently contacted Father's counsel prior to the jurisdiction/disposition hearing and indicated it was amending its recommendation that reunification services be denied to Father pursuant to section 361.5, subdivision (b)(6).[4]

The jurisdictional hearing was first called to be heard on January 9, 2024. The temporary restraining order was also to be heard on the same date. Father requested that the matter be set contested based on the recommendation that reunification services be denied. The jurisdiction hearing and hearing on a permanent restraining order was set for February 6, 2024.

The Department filed an addendum report on February 1, 2024. They recommended that the allegations in the petitions be found true; that Mother be offered Family Maintenance Services; Father be denied reunification services pursuant to section 361.5, subdivision (b)(6); and Father's visitation with Minors remain suspended. Minors remained placed with Mother. On January 30, 2024, Mother had enrolled in a domestic violence course. Minors were referred for mental health assessments. St.G. and So.G. had been referred for testing based on their limited speech. Father was still incarcerated. The Department again referenced the forensic medical examination but did not attach it to the addendum report. It was unknown how long Father would be incarcerated. Mother continued to assure the Department that she had no contact with Father and would not reconcile with him.

---

[4] Section 361.5, subdivision (b)(6), allows for bypass of reunification services when "the child has been adjudicated a dependent pursuant to any subdivision of section 300 as a result of severe sexual abuse."

9

## C. JURISDICTION/DISPOSITION HEARING

The jurisdiction hearing was held on February 6, 2024. Mother waived her rights and submitted on the allegations in the petitions. The Department submitted on their jurisdiction and addendum reports. Father did not object to the Department's reports. Father objected to the denial of reunification services. It was in Minors' best interests to grant services. Minors had lived their whole lives with Father, and he provided for the family prior to the dependency proceedings. Father had always been very involved in Minors' lives. Father also was requesting visits with Minors.

The juvenile court found all of the allegations in the petition true by a preponderance of the evidence. In reaching this conclusion, the juvenile court stated, "[B]ased on the information before the Court, the Court is not inclined to find by clear and convincing evidence the (b)(1) and the (d)(1) allegation." The juvenile court noted "In thinking about those allegations in advance of the hearing, just to be totally transparent, the Court really went back and forth to a certain degree. There's evidence obviously that after—first of all, what [A.G.] said to her mother, but there's also evidence that she retracted that a bit when she was subsequently interviewed. There's an examination that was confirmed for sexual abuse." The juvenile court then stated, "But in terms of how that connects to the bypass on (b)(6), the Court's thought is that father's services can still be bypassed under (b)(6) because what that requires is that the Court finds by clear and convincing evidence that an adjudication has occurred, not that the allegations have been found true by that standard." The juvenile court asked counsel for the Department to confirm this was the law. The Department did not "object" to the

10

juvenile court's view of the law.  The juvenile court confirmed it was finding the allegations in the petitions true by a preponderance of the evidence.

The juvenile court further ordered that Mother was to retain custody of Minors under a family maintenance plan.  The juvenile court stated, "There's clear and convincing evidence of the circumstances stated in Welfare and Institutions Code Section 361" regarding Father.  It further stated, "With regard to the reunification services for father, the Court finds there's clear and convincing evidence that [Father] is the person described in Welfare [and] Institutions Code section 361.5[, subdivision] (b)(6), and reunification services are denied, as those services are not in the best interest of [Minors]."  Father was denied visitation rights with Minors.

A permanent restraining order, expiring on February 6, 2027, was granted by the juvenile court over Father's objection.  He was to have no contact with Minors.  Father filed an appeal on February 26, 2024.

## DISCUSSION

Father contends the jurisdictional findings of sexual abuse for the section 300, subdivision (b), (d), and (j) allegations should be reversed because insufficient evidence supported that A.G. was sexually abused by him.  He insists A.G. did not disclose such abuse during a forensic interview.  Further, the juvenile court erred by relying on medical examination information without the actual examination report being submitted by the Department and without hearing expert testimony on the results.  Further, since there was no substantial evidence of sexual abuse, the dispositional bypass orders based on those findings must be reversed.

11

Section 300, subdivision (b)(1) provides for jurisdiction if "the child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness." A jurisdictional finding under section 300(b)(1) requires the Department to prove the following elements by a preponderance of the evidence: "(1) neglectful conduct, failure, or inability by the parent; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.) Subdivision (d) of section 300 provides, "The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by the child's parent or guardian or a member of the child's household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."

Section 300, subdivision (j), provides, "The child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child." "[W]here, . . . , a child has been sexually abused, any younger sibling who is approaching the age at which the child was abused, may be found to be at risk of sexual abuse." (*In re P.A.* (2006) 144 Cal.App.4th 1339, 1347 (*P.A.*).)

12

"The court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child." (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The burden of proof at the jurisdictional hearing is a preponderance of the evidence. (*In re I.C.* (2018) 4 Cal.5th 869, 876 (*I.C.*); *P.A.*, *supra*, 144 Cal.App.4th at p. 1344)

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

In the petitions, it was alleged as (b-1) that Father sexually abused A.G. by digitally penetrating her vagina and had been arrested on November 10, 2023, on charges of engaging in oral copulation or sexual penetration of a child under the age of 10. An examination of A.G. was conducted and a finding of vaginal trauma due to penetration was confirmed. It was alleged pursuant to section 300, subdivision (d), sexual abuse, that Father had sexually abused A.G. It was alleged pursuant to section 300, subdivision (j), that the abuse of A.G. posed a risk of harm to St.G. and So.G. Father contends only that

13

the allegations in the petitions under section 300, subdivision (b), (d), and (j), the sexual abuse allegations, are not supported by the evidence.

Here, Father and Mother came to the attention of the Department due to a domestic violence incident on October 10, 2023. Once Father was out of the house, A.G. disclosed that Father had touched her and pointed to her vagina. A.G. was crying and told Mother that Father had told her not to tell anyone. A.G. participated in an initial forensic interview and claimed no one had been touching her and she felt safe with Father. A.G. was interviewed at her school on October 12, 2023. When she was asked if Father had inappropriately touched her, she first responded "Yes." She then immediately said, "No." She said she had been hurt by someone but gave no further details. The follow-up medical examination was performed and was found conclusive for penetration of her vagina. In the first examination, A.G.'s vagina was swollen and exhibiting erythematous.[5] A.G. was interviewed on November 16, 2023. She reported feeling safe in the home without Father and that she was afraid of him. She stated that Father had hurt her but gave no further details. A.G.'s siblings told the social workers they did not believe A.G.'s accusations. Father stated he could have touched her vagina while cleaning her. A.G. was interviewed one last time on December 28, 2023. She stated she was not afraid of Father. She did not answer when asked if anyone touched her private parts.

---

[5] Erythematous is defined as "exhibiting abnormal redness of the skin or mucous membranes due to the accumulation of blood in dilated capillaries (as in inflammation)." (https://www.merriam.webster.com/dictionary/erythematous, as of Sept. 25, 2024)

The juvenile court considered the fact A.G. later recanted her claim that Father had touched her but stated she only "retracted a bit" when she was subsequently interviewed.  It also relied on the medical examination that confirmed sexual abuse."  The juvenile court reasonably could conclude that despite A.G. later recanting her statements, there was some indicia of reliability based on the initial allegations and the later confirmation when interviewed at her school.  Moreover, her statements were corroborated by Father admitting he may have touched her while cleaning her and was corroborated by the medical examination, which the juvenile court properly considered.  The juvenile court properly found that the sexual abuse allegations were true by a preponderance of the evidence.

Father insists the juvenile court erred by relying on the medical examination in finding the sexual abuse occurred without viewing the actual report or hearing expert testimony to explain the examination results.  However, Father never objected to the medical examination evidence presented by the Department in its reports.

"[W]hile . . . parents may question whether substantial evidence supports the juvenile court's findings . . . , by failing to object in juvenile court they have forfeited any challenge to specific defects in the report, such as omission of required content or insufficient discussion of required topics."  (*In re Mary C.* (2020) 48 Cal.App.5th 793, 801; see also *In re Daniel B.* (2014) 231 Cal.App.4th 663, 672 [" 'The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected' "].)  "By submitting on the social worker's report, father acquiesced in the juvenile court's consideration of the evidence contained in the report, but retained the

15

right to challenge the sufficiency of that evidence to support the findings. (*P.A.*, *supra*, 144 Cal.App.4th at p. 1344.)**6**

Father never objected to the admission of the social worker's statements regarding an email that she received about the follow-up medical examination. This information was included in the detention report, the jurisdiction/disposition report, and the addendum report. Father presented no affirmative evidence to contradict the medical information. The juvenile court could reasonably rely on the results of the medical examination to support its jurisdictional findings as it was conclusive of sexual abuse.

The Department raised this issue in the respondent's brief, that Father waived the issue by failing to object to the evidence in the juvenile court. Father has provided no argument nor acknowledged that there was no objection to the social worker's statements about the medical examination in the reply brief. Father simply states that the evidence of the social worker's summary of the medical report was insufficient to support the (b)(1), (d), and (j) allegations in the petition. Father failed to object to the medical examination evidence, and the trial court could properly consider it in reaching its conclusion that a preponderance of the evidence established that Father sexually abused A.G. Any arguments by Father regarding the medical examination evidence have been

---

**6** On appeal, the Department has brought a request to augment the record with the medical examination. Father objects, arguing that it was never before the trial court and is not properly considered on appeal. We agree with Father and deny the Department's request to augment the record on appeal. (See *In re K.M.* (2015) 242 Cal.App.4th 450, 456 [" 'Augmentation does not function to supplement the record with materials not before the trial court' "].)

16

forfeited on appeal. The juvenile court properly determined that a preponderance of the evidence showed the allegation of sexual abuse by Father against A.G. was true.[7]

Father also relies on *I.C.*, *supra*, 4 Cal.5th 869, to support his claim that the sexual abuse allegations should be reversed because A.G.'s statements did not have an indicia of reliability. In *I.C.*, it was alleged that the child in the case, who was three years old, had been sexually abused by Father. The child had told her mother that " 'My dad put his penis on me,' " but the next day said she was " 'just kidding.' " The child had been molested by an older child prior to these allegations. (*I.C.*, *supra*, 4 Cal.5th at p. 878.) The child was interviewed several times and stated that her father had touched her vagina with his penis. A social worker determined that the child was not able to tell the difference between a truth and a lie. (*Id.* at pp. 878-879.) The results of a medical examination were inconclusive. (*Id.* at p. 878.) The juvenile court, in ruling on the allegations, stated that it only had the hearsay statements of the three-year-old child, and at times she appeared to be confused. However, she also had repeated the allegations several times. It found the evidence supporting the reliability of the child's statements more compelling. (*Id.* at pp. 881-882.)

The California Supreme Court found that the proper test for evaluating the child's statements was "whether the ' " time, content and circumstances of the statement provide sufficient indicia of reliability.' " (*I.C.*, *supra*, 4 Cal.5th. at p. 889.) Based on the

---

[7] Father only argues on appeal that there was insufficient evidence to support that he sexually abused A.G. He makes no further argument as to St.G. and So.G. and the risk of harm to them as required for the finding of jurisdiction pursuant to section 300, subdivision (j).

evidence, the court reversed the jurisdictional findings noting that the evidence of the prior molestation made this "an unusual situation," and her confusing statements did not show an indicia of reliability. (*Id.* at pp. 893-896.)

This case differs from *I.C.* in many respects. Initially, A.G. was five years old rather than the three-year-old child in *I.C.* In addition, there was no prior molestation and A.G. did not appear to be confused about the allegations she was making. However, the most compelling difference in this case was that the medical examination evidence supported there had been sexual abuse—unlike in *I.C.* The juvenile court properly determined the sexual abuse allegations were supported by a preponderance of the evidence.

Father only argues that this court should reverse the dispositional bypass order if we find that there was no substantial evidence of sexual abuse of A.G. We have found the juvenile court's determination on the sexual abuse was supported by substantial evidence. Accordingly, we also affirm the disposition bypass order.

### DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

FIELDS
J.

18