Filed 11/20/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re K.M., a Person Coming Under the Juvenile Court Law.<br><br>ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>B.O. et al.,<br><br>    Defendants and Appellants. | G051656<br><br>(Super. Ct. No. DP024561)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Craig E. Arthur, Judge.  Reversed and remanded.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant B.O.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant W.M.

Leon J. Page, County Counsel, and Karen L. Christensen, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\*    \*    \*

B.O. (Mother) and W.M. (Father) appeal from the juvenile court's order terminating their parental rights to their three-year-old daughter K.M.  The sole issue raised on appeal concerns Orange County Social Services' (SSA) lack of inquiry regarding K.M.'s American Indian heritage as required by the Indian Child Welfare Act (ICWA).  SSA admits it failed to comply with the ICWA requirements.  Rather than stipulating to a limited reversal and having the matter returned to the trial court for further proceedings, SSA sought an immediate do-over in the trial court while the matter was still pending on appeal.

With its briefing on appeal, SSA filed a motion asking us to consider evidence of that hearing and the juvenile court's order concerning SSA's ICWA investigation and remedial efforts at notification.  SSA contends we must dismiss this appeal because Mother and Father's issues on appeal were rendered moot by the postjudgment activities.  We disagree.  The trial court lacked jurisdiction to rule on the ICWA issue following its termination of parental rights.  (Welf. & Inst. Code, § 366.26, subd. (i)(1).)[1]  Because the juvenile court's postjudgment ICWA order is void, this appeal is not moot.  And due to the undisputed ICWA violations, we order a limited reversal of the judgment and remand the matter for further proceedings.

I

*A.  ICWA Violation*

SSA concedes that at Mother's first court appearance in March 2014, she informed the juvenile court she may have American Indian heritage through her maternal

---

[1]    All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

grandmother, Marlene W.  The court ordered SSA to investigate the matter.  It failed to do so.

In SSA's subsequent reports dated May 20, 2014, and September 23, 2014, the social worker stated ICWA "may apply" but also noted Mother denied American Indian heritage in prior child abuse investigations.  In December 2014, after the section 366.26 hearing (hereafter .26 hearing) was scheduled, SSA prepared a report stating ICWA did not apply.  In a status review report prepared one month before the .26 hearing, in February 2015, the social worker again noted ICWA did not apply.  At the .26 hearing held on March 18, 2015, the juvenile court did not mention ICWA in its minute order terminating parental rights.

Mother and Father filed separate notices of appeal, and their opening briefs filed in early June 2015 raised the issue of inadequate notice and violations of ICWA.  In its briefing, SSA concedes there was inadequate notice and violations of ICWA.  Indeed, the record reflects there was no notice or investigation before judgment was entered.  Accordingly, the juvenile court's order terminating parental rights is reversed and the matter is remanded to the juvenile court with directions to order SSA to provide the appropriate tribes with proper notice of the proceedings under ICWA.  If, after receiving notice under ICWA, no tribe indicates K.M. is an Indian child within the meaning of the statutory scheme, then the juvenile court shall reinstate the order terminating parental rights.  In all other respects, the judgment is affirmed.

B.  *Motions*

On September 11, 2015, SSA filed its respondent's brief, making extensive references to the information contained in its concurrently filed motion to augment the record and take additional evidence, and dismiss the appeal as moot.  For reasons we now explain, we grant the Code of Civil Procedure section 909 motion to take additional evidence (hereafter 909 motion), deny the motion to augment, and deny the motion to dismiss the appeal.

3

In its motions, SSA asserted it now possessed documentation and reports that resolved the parents' ICWA concerns and, thus, rendered the appeal moot. SSA explained it "reinitiated ICWA inquiry and notice efforts" in July 2015 (after Mother and Father filed their opening briefs in this appeal) and the trial court reappointed counsel for both parents for the limited purpose of ICWA notices and findings. On August 31, 2015, SSA filed the ICWA documentation it sent to several tribes along with copies of the return receipts. It supplied response letters from several Cherokee tribes declining K.M. for tribal membership.

SSA attached several supporting documents to its motion. First SSA provided a copy of the juvenile court's minute order, dated July 10, 2015, containing the following statements: (1) the court read, considered, and signed a "third page stipulation submitted this date"; (2) the court makes orders and findings pursuant to the stipulation; (3) "Due to inadvertence, ICWA findings were not properly made in this matter"; (4) the court schedules a ICWA compliance and findings hearing for July 16, 2015; and (5) the court reappoints counsel to represent the parents. A copy of the stipulation referred to in the order is not attached as an exhibit to SSA's 909 motion.

Second, SSA provided a copy of the juvenile court's minute order dated August 31, 2015. The minute order stated that at "first call" the court noted ICWA was not previously addressed, documentation had been filed, and notice was given to all appropriate tribes. The court determined ICWA did not apply. The minute order next indicated Mother's counsel requested a "second call" of the matter. During the second call Mother's counsel requested the court "vacate" the previous order regarding ICWA and continue the matter one day because the matter was "currently under appeal." The court agreed to suspend the order ICWA did not apply and trailed the hearing to the following day.

The minute order dated September 1, 2015, stated the juvenile court considered argument. The order added, "counsel for Mother objects to the court making

4

any further orders regarding ICWA [pursuant to section] 366.26[, subdivision] (i)(1), as stated on the record." Father's counsel joined in the objections. The minute order stated the court heard argument from minor's counsel and county counsel "as stated on the record." The court lifted the temporary suspension of the ICWA orders and restated its finding ICWA does not apply. SSA did not provide a copy of the reporter's transcript describing the exact nature of the arguments, objections, and discussions made at either postjudgment hearing.

Finally, in support of the motion, county counsel, Mark Sanchez, submitted a declaration stating he represented SSA in the trial court and parents did not challenge "the sufficiency or content of SSA's renewed notice efforts" but focused their arguments on the nature of the proceedings. Sanchez declared the parents objected to the ICWA findings on the grounds the ruling was improperly made after termination of parental rights and while an appeal was pending.

The parents filed separate motions opposing SSA's motions. Mother's counsel asserted postjudgment evidence is generally rejected by a reviewing court. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) In addition, Mother maintained SSA's ICWA evidence is insufficient to prove the appeal is moot: "It is alarming that missing from the [postjudgment] evidence were the reporter's transcripts" for the August 31 and September 1 hearings. Counsel maintains the legal arguments made on the record both days should have been disclosed.

Mother's counsel speculates, "What is also apparent is that [SSA] is attempting to do anything it can to avoid a reversal by this [c]ourt. [SSA] concedes ICWA notice was not sent as required by law. . . . If [SSA] wanted to remedy this issue in the fastest most efficient manner, [SSA] should have stipulated to a limited ICWA reversal, and an expedited remittitur. The solution attempted by [SSA] deprives the parents and child of due process because they will be deprived [of] oversight or review by this [c]ourt as to the adequacy of the new ICWA investigations and notices. SSA

5

already got it wrong at least one time in this case." Counsel argued the ICWA notices were missing important information and were inadequate. Counsel explained this court cannot review the objections or argument made at the hearing because no reporter's transcripts were provided. Finally, counsel asserted the juvenile court lacked jurisdiction to hear the ICWA issue while it was on appeal. Father's counsel raised the same objections and added it would be improper for this court to take judicial notice or accept the new evidence.

The first issue we must decide is whether the new evidence can be reviewed by this court and by what mechanism. SSA seeks to augment the record with events occurring six months after the termination order, creating a new record rather than completing the appellate record is this case. The request to augment with a new record is inappropriate. "Augmentation does not function to supplement the record with materials not before the trial court. [Citations.] [R]ather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' [Citation.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 (*Vons*).) The augmentation procedure cannot be used to bring up matters occurring during the pendency of the appeal because those matters are outside the superior court record. (See also Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2015) ¶ 5:134, p. 5-45.)

Similarly, taking judicial notice is not a viable solution. Reviewing courts generally do not take judicial notice of evidence not presented to the trial court absent exceptional circumstances. (*Vons, supra,* 14 Cal.4th at p. 444, fn.3.) Moreover, judicial notice may be taken of the *existence* of court documents but not the truth of factual findings made in other court rulings. (See *Johnson & Johnson v. Superior Court* (2011) 192 Cal.App.4th 757, 768.)

Code of Civil Procedure section 909 permits appellate courts to make independent factual findings and take additional evidence on appeal.[2] Postjudgment evidence may also be used to show that the appeal, or an issue involved, is moot. (See also Eisenberg et al., *supra,* ¶ 5:184.5, p. 5-68.)  We recognize our Supreme Court in *In re Zeth S.* (2003) 31 Cal.4th 396, 413, held a reviewing court could not consider new postjudgment evidence for the purpose of reversing an order terminating parental rights. However, our case is distinguishable because SSA is not seeking to introduce evidence to overturn the order terminating parental rights.  Rather, SSA believes the evidence proves the appeal is moot.  "[T]he beneficial consequence of motions to dismiss, where granted, will be to 'expedit[e] the proceedings and promot[e] the finality of the juvenile court's orders and judgment' [citation]—precisely the policy advanced by our ruling in *Zeth S.*" (*In re Josiah Z.* (2005) 36 Cal.4th 664, 676.)  We therefore grant the motion, and consider the new evidence, pursuant to Code of Civil Procedure section 909.

But this is a hollow victory for SSA.  We conclude SSA's new evidence of an ICWA ruling does not render the appeal moot because the juvenile court lacked jurisdiction to rule on any collateral dispute of the termination order.  Under section 366.26, subdivision (i)(1), "a juvenile court lacks jurisdiction to modify or revoke an order terminating parental rights once it has become final." (*In re Jerred H.* (2004)

---

[2]      That section provides the following: "In all cases where trial by jury is not a matter of right . . . the reviewing court may make factual determinations contrary to or in addition to those made by the trial court.  The factual determinations may be based on the evidence adduced before the trial court either with or without the taking of evidence by the reviewing court.  The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require.  This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues." (Code Civ. Proc., § 909.)

121 Cal.App.4th 793, 796 [juvenile court could not grant child's petition to reinstate parental rights or declare child's stepfather his presumed father because the rights of all possible parents were terminated].) The statute mandates, "Any order of the court permanently terminating parental rights under this section shall be conclusive and binding upon the child, upon the parent or parents and upon all other persons who have been served with citation by publication or otherwise as provided in this chapter. After making the order, the juvenile court shall have no power to set aside, change, or modify it, . . . but nothing in this section shall be construed to limit the right to appeal the order." Thus, the Legislature has expressly prohibited the collateral dispute of a termination order, and the order may be reviewed only by direct appeal. (See e.g. *In re Jacob E.* (2004) 121 Cal.App.4th 909, 925 [court lacks jurisdiction to make visitation order following termination of mother's parental rights because having failed to appeal termination order, mother's attempt to obtain visitation was "in substance a collateral attack on the termination of her parental rights"]; *In re Rachel M.* (2003) 113 Cal.App.4th 1289, 1297 [writ of error coram vobis not proper mechanism to overturn termination of parental rights order absent evidence of extrinsic fraud].)

As explained in *In re Ronald V.* (1993) 13 Cal.App.4th 1803, 1806-1807 (*Ronald V.*), if the juvenile court considers a collateral dispute of a termination order, any resulting action will be deemed void as an act in excess of the court's jurisdiction. In that case, the mother agreed to the termination of her parental rights on the understanding the prospective adoptive father would permit the mother to continue her relationship with the child. After the adoptive father died, the mother filed a petition for modification of the order terminating her parental rights. (*Id.* at p. 1805.) The juvenile court denied the petition. (*Ibid.*) The appellate court held former section 366.26, subdivision (h), now section 366.26, subdivision (i), precludes modification of an order terminating parental rights. "Having failed to appeal from the termination order, [the mother's] petition to modify the permanency planning order was in substance a collateral attack on the

termination of her parental rights.  She was asking the court to give her de facto parent status and visitation rights, in addition to changing the plan for [the minor] from adoption to long-term foster care or guardianship.  She was, in short, asking the juvenile court to do what it no longer had the jurisdiction to do—namely to undo the termination of her parental rights and reinstate her now as a de facto parent to [the minor].  [Former] [s]ubdivision (h) of section 366.26 specifically states that once the termination order issues the court has 'no power' to 'modify it.'  The lower court had no jurisdiction to hear the section 388 motion, because in this instance the motion was nothing more than a collateral attack, made after the time to appeal had elapsed, on the order terminating parental rights." (*Ronald V., supra*, 13 Cal.App.4th at p. 1806.)

In its disposition of the appeal in *Ronald V.,* the court held the juvenile court lacked jurisdiction to consider the petition and declared the order denying the petition void.  (*Ronald V., supra,* 13 Cal.App.4th at p. 1807.)  However, it did not dismiss the appeal because it determined the void order was appealable as on order after judgment.  (*Id.* at p. 1807, fn. 2.)  We apply the same reasoning here.

In the case before us, the juvenile court lacked jurisdiction to consider SSA belated remedial ICWA efforts because it was in substance a collateral attack on the termination order.  Compliance with ICWA is required before terminating parental rights. (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1424 ["failure to provide the required notice requires remand"].)  Moreover, if the new evidence revealed K.M. was an Indian child, as defined by ICWA, the juvenile court would have been required to invalidate prior orders taken in violation of ICWA, i.e., reverse the termination of parental rights. (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 476.)  Section 366.26, subdivision (i), clearly states juvenile courts lack jurisdiction to modify or revoke an order terminating parental rights.  Accordingly, the court's ICWA order is void.

As aptly noted by one treatise, Seiser and Kumli, California Juvenile Court Practice and Procedure (2015) section 2.125[2][b], page 2-380, "The single most

9

common reason for reversal in dependency cases involving children who may be of Indian heritage is the failure of the social services department and the juvenile court to follow the California requirements for inquiry and notice to Indian tribes . . . .” In other words, ICWA notice deficiencies are not a new issue for SSA. The most expeditious and efficient way to solve this problem is for the parties to stipulate to a limited reversal and an expedited remittitur.[3]

## III

We conclude the juvenile court acted in excess of its jurisdiction in revisiting the termination order while the matter was being reviewed on appeal pursuant to section 366.26, subdivision (i). SSA's new evidence and the juvenile court's postjudgment order have no relevance to the subject of this appeal, i.e., review of the termination order. Accordingly, the juvenile court's judgment terminating parental rights is reversed and the matter is remanded to the juvenile court with directions to order SSA to provide the appropriate tribes with proper notice of the proceedings under ICWA. If, after receiving notice under ICWA, no tribe indicates K.M. is an Indian child within the meaning of the statutory scheme, then the juvenile court shall reinstate the order terminating parental rights. In all other respects, the judgment is affirmed. Mother's and SSA's requests we take judicial notice are granted. SSA's request we take additional

---

[3] We grant Mother's and SSA's requests to take judicial notice of a new notice of appeal Mother filed challenging the court's postjudgment ICWA order. In light of our holding reversing and remanding the matter for a new hearing, it appears Mother's new appeal will be rendered moot.

evidence under Code of Civil Procedure section 909 is granted.  All other motions are denied.


                                        O'LEARY, P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.