Filed 6/14/22  In re V.B. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re V.B., a Person Coming Under the Juvenile Court Law. | |
| TUOLUMNE COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JOHN B., <br><br> Defendant and Appellant. | F083287 <br><br> (Super. Ct. No. JV7946) <br><br><br> **OPINION** |

**THE COURT**\*

APPEAL from orders of the Superior Court of Tuolumne County.  Donald Segerstrom, Judge.

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Sarah Carrillo, County Counsel, and Maria Sullivan, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Detjen, Acting P. J., Smith, J. and Meehan, J.

Cathleen B. (mother) and John B. (father) are the parents of Victoria B.[1] Victoria was the subject of a Welfare and Institutions Code section 300[2] petition from which two section 387 supplemental petitions were filed. This appeal concerns the second supplemental petition. Father appeals the juvenile court's orders adjudicating the supplemental petition and the dispositional orders. He does not challenge the orders on their merits. His sole contention on appeal is that the Tuolumne County Department of Social Services (department) failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because it did not ask extended family members about the child's possible Indian ancestry.

The department concedes that it failed to conduct an adequate inquiry. We conditionally affirm the orders and remand for the juvenile court and the department to comply with the inquiry provisions of ICWA and related California law.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

**Prior Dependency Proceedings**

On November 7, 2018, Victoria came to the attention of the department after a law enforcement officer found her three-year-old half sibling wandering down a road wearing only a soiled diaper. As a result of this incident, the department discovered that mother and father's homes were unsafe and unsanitary.[4] Thereafter, the department filed

---

[1] Mother and father were married and had two minor children together (Victoria and Sean B.) and an adult daughter (Christina B.). Mother has another adult daughter named Autumn A. from a different relationship. Father and Autumn have children together. Although the department filed dependency petitions on behalf of all of the children, only Victoria is the subject of this appeal.

[2] All further statutory references are to the Welfare and Institutions Code.

[3] The sole issue on appeal concerns ICWA; therefore, we restrict our facts to those bearing on that issue.

[4] Although mother and father were married, they lived separately.

a dependency petition on behalf of Victoria and placed her in protective custody. That same day, father and mother verbally declared that they did not have Indian ancestry.

On November 9, 2018, father and mother each completed a Parental Notification of Indian Status form (ICWA-020) indicating they had no known Indian ancestry.

On January 16, 2019, Victoria was found to be a person described by section 300.

On January 29, 2019, at the disposition hearing, Victoria was ordered returned to mother's custody on a family maintenance plan and father was ordered to participate in family reunification services. The juvenile court found ICWA did not apply.

On December 16, 2019, the department filed a supplemental petition due to ongoing concerns in the household. The juvenile court eventually found the allegations in the supplemental petition true, but ordered Victoria to remain in mother's custody. Mother was ordered to participate in a family maintenance plan and father's reunification services were terminated.

**Current Dependency Proceedings**

On April 7, 2021, mother was arrested for felony child endangerment after her house was again found to be unsafe and unsanitary. Victoria was placed in protective custody. Paternal aunt Sharon agreed to stay with her in a hotel for the weekend pending placement arrangements. Although Sharon was interested in placement of Victoria, the department had previously only approved her home for respite care.

On April 9, 2021, the department filed the subject supplemental petition on behalf of Victoria. The supplemental petition had an Indian Child Inquiry Attachment form (ICWA-010(A)), stating that mother and father were asked about Indian ancestry on November 9, 2018, and that they gave no reason to believe Victoria was or could be an Indian child.

On April 12, 2021, at the detention hearing, the juvenile court ordered mother and father to complete an ICWA-020 form.

On April 16, 2021, at the further detention hearing, the juvenile court again ordered mother and father to complete an ICWA-020 form.

On August 23, 2021, at the contested disposition hearing, father was denied reunification services and the juvenile court found ICWA did not apply.

On September 13, 2021, father filed a notice of appeal.

## DISCUSSION

### I.    Applicable Law

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) "ICWA provides that '[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.' " (*In re A.R.* (2022) 77 Cal.App.5th 197, 203 (*A.R.*); 25 U.S.C. § 1912(a).) "This notice requirement, which is also codified in California law [citation], enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding. " (*In re Isaiah W.*, at p. 5.)

"In California, section 224.2 'codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [Bureau of Indian Affairs].' " (*A.R.*, *supra*, 77 Cal.App.5th at p. 204.) "[S]ection 224.2, 'creates three distinct duties regarding ICWA in dependency proceedings.' " (*In re H.V.* (2022) 75 Cal.App.5th 433, 437 (*H.V.*).) "First, section 224.2, subdivision (b), requires the child protective agency to ask 'the child, parents, legal guardian, Indian custodian,

extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' " (*In re J.C.* (2022) 77 Cal.App.5th 70, 77 (*J.C.*).) "Although commonly referred to as the 'initial duty of inquiry,' it 'begins with the initial contact' (§ 224.2, subd. (a)) and continues throughout the dependency proceedings." (*Ibid.*) "Second, if the court or child protective agency 'has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child,' the court and the Department 'shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' " (*Id.* at p. 78, fn. omitted.) "Third, if the further inquiry ' " 'results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply.' " ' " (*Ibid.*)

" ' " 'The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings.' " [Citation.] "If the court makes a finding that proper and adequate further inquiry and due diligence as required in [section 224.2] have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence." ' " (*J.C.*, *supra*, 77 Cal.App.5th at p. 78.) The juvenile court may not "find that ICWA does not apply when the absence of evidence that a child is an Indian child results from a [child protective agency] inquiry that is not proper, adequate, or demonstrative of due diligence." (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 408.)

" '[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.] We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve

all conflicts in favor of affirmance.' " (*In re D.F.* (2020) 55 Cal.App.5th 558, 565.) "Thus, we do not consider whether there is evidence from which the dependency court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw." (*In re Noe F.* (2013) 213 Cal.App.4th 358, 366.)

## II. Substantial Evidence Does Not Support the Juvenile Court's ICWA Finding

Father contends the juvenile court's ICWA finding was not supported by substantial evidence because the record does not reflect that extended family members were asked about possible Indian ancestry. The department concedes it failed to conduct an adequate inquiry, and we agree.[5]

Section 224.2, subdivision (b), required the department, as part of its initial inquiry, to inquire of the children's extended family members regarding possible Indian ancestry. "Under both ICWA and California law, ' "extended family member[s]" ' include the child's 'grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.' " (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1053; 25 U.S.C. § 1903(2); § 224.1, subd. (c).)

Father notes the department had contact with Sharon. Sharon and her husband were investigated for placement and participated in multiple child and family team meetings. Sharon also attended various hearings and maintained contact with the department during the proceedings. Additionally, the department had contact with

---

[5] The department concedes it failed to discharge its duty of inquiry and states that it has "begun the re-inquiry process." The department attached a declaration from a social worker detailing the department's inquiry efforts ("Exhibit A") to its letter brief. In response, father filed a motion objecting to this court's consideration of the declaration on the basis that it contains information that is not part of the record. The general rule is that " ' "an appellate court will consider only matters which were part of the record at the time the judgment was entered." [Citation.]' " (*In re K.M.* (2015) 242 Cal.App.4th 450, 456.) The department has not presented a valid basis for us to depart from the general rule. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 405.) We grant father's motion.

mother and father's adult daughter Christina. She participated in child and family team meetings and hearings. Nothing in the record suggests anyone in the department asked these family members about possible Indian ancestry.[6] (See *H.V.*, *supra*, 75 Cal.App.5th at p. 438 [child protective agency's "first step inquiry duty under ICWA and state law was broader" than simply asking the parents about possible Indian ancestry, "requiring it also to interview, among others, extended family members"].) Neither is there any evidence in the record that shows the juvenile court inquired about the department's efforts. (See *In re Antonio R.* (2022) 76 Cal.App.5th 421, 431 ["[A] juvenile court errs in making a finding ICWA does not apply to the proceedings without first ensuring that the Department has made an adequate inquiry under ICWA and California law, and if necessary, the court must continue the proceedings and order the Department to fulfill its responsibilities."].)

Father also points out that the juvenile court failed to conduct its own ICWA inquiry at the hearings. (See section 224.2, subd. (c) ["At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child."].) Indeed, we find nothing in the record that suggests the court asked mother, father, or any other participating family member about Indian ancestry.

"[T]he Courts of Appeal are divided as to whether a parent must make an affirmative showing of prejudice to support reversal where the Department failed fully to perform its initial duty of inquiry." (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 433.) "The published cases seem to fall into three groups: the first concludes that the conceded error warrants reversal in every case because the duty to inquire was mandatory and unconditional." (*A.R.*, *supra*, 77 Cal.App.5th at p. 205; see, e.g., *H.V.*, *supra*, 75

---

**6** The only family member the department inquired of regarding Indian ancestry was Autumn, as her children became involved in dependency proceedings at the same time as Victoria.

Cal.App.5th at p. 438; see also, e.g., *In re Y.W.* (2021) 70 Cal.App.5th 542, 556.) However a "rule establishing automatic reversal without any reason to believe Native American heritage exists would potentially reward parental gamesmanship and undermine the policy favoring prompt resolution of juvenile dependency cases. It also potentially runs afoul of the constitutional requirement that judgments can only be reversed on appeal in cases where a manifest miscarriage of justice has been shown." (*A.R.*, at p. 206.)

"The second group concludes that the error does not warrant reversal unless a 'miscarriage of justice' is demonstrated to have occurred as a consequence of the failure to inquire about Native American heritage." (*A.R.*, *supra*, 77 Cal.App.5th at p. 205.) "These cases would allow a parent to make an offer of proof on appeal, showing there is reason to believe Native American heritage exists." (*Ibid.*) Absent such a showing, judgment would be affirmed. (*Ibid.*) But this rule "effectively shifts the agency's unconditional statutory burden to the parents in cases where the agency has failed to fulfill it." (*Id*. at p. 206.)

"The third option is the self-described 'middle ground' approach taken in [*In re Benjamin M.* (2021) 70 Cal.App.5th 735], in which the appellate court would determine, on a case by case basis, whether the record reflects there are known relatives identified by the child welfare agency, who appear to have been able to shed light on the issue of Native American heritage. *Benjamin M.* held that the failure to inquire would be reversible error if 'there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child.' " (*A.R.*, *supra*, 77 Cal.App.5th at pp. 205–206.) *Benjamin M.* rejected the idea that an appealing parent had to make an offer of proof about the child's Indian ancestry to demonstrate prejudice. (*Benjamin M.*, at p. 745.) Moreover, "*Benjamin M.* rejected an approach that would require reversal in all cases where the agency erred, explaining: 'There are cases where … it was obvious that additional information would not have been meaningful to the inquiry. This might

occur where the evidence already uncovered in the initial inquiry was sufficient for a reliable determination.' " (*J.C.*, *supra*, 77 Cal.App.5th at p. 81.)  For example, additional information would not be meaningful where the department had already made an undisputed and unchallenged finding that ICWA did not apply to a dependent child's full siblings.  (*In re Charles W.* (2021) 66 Cal.App.5th 483, 490 [department made adequate initial inquiry where there was an undisputed and unchallenged finding that ICWA did not apply to two older siblings].)  The case before us does not fit into such a category.

The department had contact with multiple relatives and could have asked about the children's Indian status.  Although mother and father denied having Indian ancestry, "it is not uncommon for parents to mistakenly disclaim (or claim) Indian ancestry." (*J.C.*, *supra*, 77 Cal.App.5th at p. 81.)  Thus, we conclude the juvenile court's finding that ICWA did not apply was not supported by substantial evidence.

## DISPOSITION

The May 19, 2021, orders adjudicating the supplemental petition, and the August 23, 2021, disposition orders are conditionally affirmed.  We remand for the department and the juvenile court to comply with the inquiry provisions of ICWA and California law.  If the court finds the children are Indian children, it shall conduct new proceedings in compliance with ICWA and related California law.  If not, the court's original orders will remain in effect.