Filed 10/10/24  In re A.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.G., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E083853 |
| Plaintiff and Respondent, | (Super.Ct.No. J297360) |
| v. | OPINION |
| A.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Dismissed.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Landon Villavaso, Deputy County Counsel, for Plaintiff and Respondent.

1

Appellant A.H. (mother) appeals from the order terminating parental rights and freeing her child A.G. for adoption.  (Welf. & Inst. Code, § 366.26.)[1]  Her sole contention on appeal is that respondent San Bernardino County Children and Family Services (CFS) "did not comply with the requirements of the Indian Child Welfare Act [of 1978 (ICWA; 25 U.S.C. § 1901 et seq.)] when failing to provide the juvenile court with copies of its [correspondence with] the Blackfeet Indian tribe following the reports from three different maternal relatives of their beliefs that their family had Blackfeet Indian heritage."  CFS disagrees, arguing the court had sufficient information of its investigatory efforts and the child's half siblings' Indian ancestry to make an informed decision.  CFS moves to augment the record to include documentation from its 2017 investigation involving A.G.'s half sibling that moots this appeal.  Mother opposes the motion.  As we explain, we grant the motion to augment, accept the evidence in the postjudgment records under Code of Civil Procedure section 909, and dismiss the appeal as moot.

## I.  PROCEDURAL BACKGROUND AND FACTS

On May 31, 2023, CFS filed a petition under section 300, subdivisions (b)(1) and (j), alleging mother's untreated mental health illness and history of substance use impairs her ability to provide adequate care for her newborn baby (A.G.), the alleged father (An.G.) failed to protect A.G., and both failed to reunify with their two older children

---

[1]  All undesignated section references are to the Welfare and Institutions Code.

resulting in the termination of their parental rights in 2019 and 2022.[2] On May 25, mother reported that she has no Native American heritage. The juvenile court detained A.G. and ordered mother to complete the Judicial Council Forms, form ICWA-020, the parental notification of Indian status. Mother was granted weekly supervised visitation.

The jurisdiction/disposition report filed June 29, 2023, included a description of inquiries made of maternal relatives regarding Indian ancestry. In June 2023, the maternal grandfather (J.H.) denied having Native American ancestry, while the maternal cousin (T.G.) claimed possible Blackfeet ancestry; however, she reported prior searches were unable to confirm this. In mother's prior dependency case involving one of A.G.'s half siblings (case No. J270469), the court found that ICWA did not apply. On June 29, 2023, CFS provided the court with the "original petitions, minute orders indicating which past allegations [were] found true, minute orders terminating services, and minute orders terminating Parental Rights pertaining to [A.G.'s half] siblings, [A.G.2] ([case No.] J291286) and [A.G.1] ([case No.] J270469)."

On September 11, 2023, a social worker made an informal ICWA inquiry to the Blackfeet Tribe of the Blackfeet Indian Reservation of Montana via email, but had not yet received a response. A guardian ad litem was appointed for mother to assist her in

---

[2] Subsequent DNA testing confirmed the alleged father is not A.G.'s biological father. On September 12, 2023, the alleged father submitted the ICWA-020 form indicating he has no Indian ancestry. On October 27, the juvenile court inquired about his Indian ancestry, and he denied having any Indian or Native American blood. On January 9, 2024, the court issued a judgment of nonpaternity.

Regarding A.G.'s half siblings, the parental rights to A.G.2 were terminated on July 27, 2022 (case No. J291286), and the rights to A.G.1 were terminated on April 15, 2019 (case No. J270469).

understanding and participating in court proceedings. On September 13, the court found that ICWA does not apply[3] and visitation is detrimental.

At the contested jurisdiction/disposition hearing on January 9, 2024, the juvenile court sustained the allegations in the petition as to mother only, bypassed reunification services under section 361.5, subdivision (b)(7), (10) and (11), and set an ICWA notice review hearing.

In February 2024, the social worker attempted to contact the maternal family members regarding A.G.'s Indian ancestry. She called the maternal grandfather (J.H.), but the call was unanswered; she spoke with maternal cousins (R.T. and T.G.) and the maternal uncle (Ja.H.). They stated that they were told and/or believed they had Native American ancestry, specifically, Blackfeet Tribe. Ja.H. stated his mother (C.H.) is deceased. T.G. added that they were also told they did not have Native American ancestry. The social worker noted that previously, the court "found ICWA does not apply for [half] siblings J291286 and J270469 on 06/03/2022 and 05/10/2018 at the ICWA hearing." Nonetheless, she sent informal inquiry notices via certified letter and email to the Blackfeet Tribe of the Blackfeet Indian Reservation of Montana.

---

[3] "THE COURT: And, ma'am, do you know whether you have any Indian or Native American blood?
    "THE MOTHER: The U.S. Constitution is my tribe.
    "THE COURT: So that will be a 'no' with respect to an Indian tribe?
    "THE MOTHER: The United States Constitution is my tribe.
    "THE COURT: Any objection to me finding ICWA does not apply at this time, [CFS counsel]?
    "[CFS COUNSEL]: Fine."

On February 29, 2024, County Counsel informed the court that "[a]ll relatives have been inquired with or attempted. [¶] The relatives continue to claim Blackfeet heritage. [CFS] did send a certified letter and e-mail to the tribe and we are awaiting a response, so I would ask the Court to confirm the [section 366.26] hearing and set it for an ICWA and notice further review just to confirm everything has been resolved for notice and ICWA but I don't anticipate any problems."

According to the section 366.26 report filed April 30, 2024, CFS had received a copy of the certified mail receipt showing the Blackfeet Indian Tribe had received its inquiry letter on March 12, 2024, but had not yet responded. On May 8, 2024, county counsel requested the juvenile court find that ICWA does not apply. Counsel explained, "We have not received a response, however, there are no known relatives who are members, neither parent is a member and it does not appear any parents are eligible, let alone the child, so at this time we have no reason to know the child is Indian and [CFS] has fulfilled its duty in regards to reason to believe, so I would ask the Court to find ICWA does not apply." Granting county counsel's request, the court found that ICWA did not apply, terminated mother's parental rights to A.G. (over her objection), and selected adoption as the permanent plan.

## II. DISCUSSION

On appeal, mother faults CFS for failing to submit documentation of its recent correspondence with the Blackfeet Tribe, or its prior ICWA investigations as to A.G.'s half siblings, and argues that "it is impossible to know whether noticing was effectuated and/or sufficient, or the basis for why a presumed no-ICWA finding was made." In

5

response, CFS argues its documentation was sufficient because it only had a reason to believe that A.G. was an Indian child.  Nonetheless, CFS asks us to augment the record to include ICWA declarations of due diligence dated May 24 and November 27, 2017, involving mother's older child/A.G.'s half sibling (A.G.1; case No. J270469), which show its correspondence with the Blackfeet Tribe and the tribe's response.

Under Code of Civil Procedure section 909, "[i]n all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make factual determinations contrary to or in addition to those made by the trial court. . . .  The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require.  This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues."

When postjudgment evidence is offered to an appellate court in support of a motion to dismiss a juvenile dependency appeal, it is "routinely consider[ed]" because, if the motion is granted, it will have "the beneficial consequence" of "'expedit[ing] the proceedings and promot[ing] the finality of the juvenile court's orders and judgment.'" (*In re Josiah Z.* (2005) 36 Cal.4th 664, 676; accord, *In re K.M.* (2015) 242 Cal.App.4th 450, 456 [postjudgment evidence may "be used to show that the appeal, or an issue

6

involved, is moot"].)  However, the authority granted by Code of Civil Procedure section 909 "'should be exercised sparingly'" and only when "'exceptional circumstances'" are present.  (*In re Zeth S*. (2003) 31 Cal.4th 396, 405, italics omitted.)

We conclude this is one of the rare cases where it is appropriate to consider evidence outside of the appellate record.  There is already an order terminating mother's parental rights of her older child A.G.1.  Admission of CFS's 2017 correspondence with the Blackfeet Tribe would not merely expedite a resolution in A.G.'s case, but it would promote the finality of the order terminating parental rights and prevent further delay in A.G.'s stability.  Mother objects to our consideration of this evidence on the grounds the documentation was available to CFS when it created its reports on A.G.'s behalf and "a previous determination that [his] sibling was not an Indian child is not dispositive of [his] Indian status because 'a determination of tribal membership is made on an individual basis.'"  She contends this case does not involve "exceptional circumstances warranting appellate factfinding under Code of Civil Procedure section 909."  (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1105 (*Kenneth D.*).)  We disagree.

According to CFS, the documentation attached to its motion to augment "demonstrate [CFS] has conducted an extensive investigation of Indian ancestry regarding . . . mother and [A.G.'s] extended family members[, and t]his investigation culminated in the conclusion that mother and her extended family members did not have Indian ancestry and were not members of the Blackfeet Indian tribe, or eligible for membership in the Blackfeet Indian tribe."  In response, mother analogizes this case to *Kenneth D*., and argues "'the nature of this evidence only highlights why it should be

7

presented to the juvenile court rather than for the first time on appeal.'" (*Kenneth D.*, *supra*, 16 Cal.5th at p. 1105.) In *Kenneth D.*, the child was removed from mother's custody shortly after his birth. (*Id.* at p. 1095.) The juvenile court recognized T.D. as the presumed father. (*Ibid.*) At the detention hearing, T.D. denied having any Native American heritage, and the court found that ICWA did not apply. (*Ibid.*) Later, paternity testing identified J.T. as the child's father; however, the court failed to ask about J.T.'s potential Indian heritage. (*Ibid.*) At the six-month hearing, the court terminated reunification services and set the matter for a section 366.26 hearing; J.T. requested a continuance, reunification services, and amendment of the child's birth certificate. (*Id.* at p. 1096.) The court denied J.T.'s requests and again, without asking J.T. about his Indian heritage, found ICWA did not apply. (*Ibid.*)

Proceeding to the section 366.26 hearing, the department recommended termination of parental rights; however, it had never contacted J.T. or his family about possible Indian heritage. (*Kenneth D.*, *supra*, 16 Cal.5th at p. 1096.) After the juvenile court terminated parental rights, J.T. appealed, claiming the department failed to comply with the inquiry and notice provisions of ICWA. (*Id.* at p. 1096-1097.) Before the opening brief was filed, the department contacted J.T., the paternal grandmother, and the federal Bureau of Indian Affairs, and confirmed that J.T. had no Indian ancestry. (*Id.* at p. 1096.) It then requested the Court of Appeal augment the record to include this new information and find that "ICWA was properly noticed and did not apply." (*Ibid.*) The Court of Appeal granted the request and concluded any error in the failure to comply with ICWA's inquiry and notice provisions was harmless in light of the augmented record.

8

(*Id*. at pp. 1096-1097.) On review, the California Supreme Court overturned the Court of Appeal's decision, with directions to conditionally reverse the juvenile court's order terminating parental rights and remand for compliance with ICWA and California implementing statutes. (*Kenneth D*., at p. 1094.) The Supreme Court explained, "The sufficiency of an ICWA inquiry must generally be determined by the juvenile court in the first instance. Because no exceptional circumstances exist here, the Court of Appeal's consideration of previously unadmitted evidence on appeal was error." (*Ibid.*)

The facts in this case significantly differ from the facts in *Kenneth D*. Here, CFS satisfied the statutory mandates by making several inquiries of mother and her relatives about their Indian heritage, along with sending informal inquiry notices via certified letter and email to the Blackfeet Tribe of the Blackfeet Indian Reservation of Montana. Also, CFS informed the court that it (the juvenile court) had previously "found ICWA [did] not apply for [A.G.'s] siblings [mother's older children] J291286 and J270469 on 06/03/2022 and 05/10/2018." Thus, there was no "'abject failure of the [d]epartment and juvenile court to inquire as to [mother's] possible Native American heritage'" before termination of parental rights. (*Kenneth D*., *supra*, 16 Cal.5th at p. 1100.) Moreover, CFS did not seek to introduce "evidence of postjudgment ICWA inquiry to cure defects in the inquiry performed before judgment." (*Id*. at p. 1107.) Rather, the evidence of its ICWA inquiries (both recently and previously) was provided to the juvenile court, albeit verbally. The request to augment simply offers documentation to support CFS's verbal representations. Given these facts, we conclude exceptional circumstances have been presented to warrant our consideration of the documents attached to the motion to

9

augment in determining whether this appeal is moot. "Code of Civil Procedure section 909 exists for exactly these kinds of exceptional cases and [the] Courts of Appeal are well equipped to distinguish between unexceptional fact patterns like *Kenneth D.* and exceptional cases like the one presented here." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1158 (dis. opn. of Groban, J.).)

According to CFS's 2017 correspondence regarding mother's older child, the ICWA Coordinator for the Blackfeet Tribe was not able to find A.G.'s half sibling A.G.1, mother, maternal grandmother, maternal grandfather, or maternal great-grandparents listed on the tribal rolls. Thus, it is not likely that requiring CFS to produce its current correspondence with the Blackfeet Tribe would reveal information likely to bear meaningfully on the issue of A.G.'s Indian status. Consequently, we dismiss the appeal as moot.

III.  CONCLUSION

The appeal is dismissed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER<br>Acting P. J.

We concur:

CODRINGTON
J.

FIELDS
J.

10