Filed 2/25/26  In re Dillon H. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re DILLON H. et al., Persons Coming Under the Juvenile Court Law. | |
| MERCED COUNTY HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> STEVEN H., <br><br> Defendant and Appellant. | F089901 <br><br> (Super. Ct. Nos. 24JP-00038-A, 24JP-00038-B, 24JP-00155-A) |
| In re A.H., a Person Coming Under the Juvenile Court Law. | |
| MERCED COUNTY HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> STEVEN H., <br><br> Defendant and Appellant. | F089902 <br><br> (Super. Ct. No. 24JP-00155-A) <br><br> **OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County. Mark V. Bacciarini, Judge.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Forrest W. Hansen, County Counsel, and Ann Hanson, Deputy County Counsel; Gordon-Creed, Kelley, Holl & Sugerman, Jeremy Sugerman and Anne H. Nguyen, for Plaintiff and Respondent.

-ooOoo-

Appellant Steven H. is the father of 11-year-old Dillon H., 10-year-old Destiny H., and one-year-old A.H., who are the subjects of dependency cases. In this consolidated appeal, the sole issue is whether the juvenile court failed to comply with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA)) before finding the children were not Indian children.[1] (Welf. & Inst. Code,[2] § 224.2.) Father argues the Merced County Human Services Agency (agency) failed to conduct an adequate inquiry into the children's Indian heritage.[3]

Because the juvenile court has not made a final finding that ICWA does not apply in either dependency case and the dependency proceedings are still ongoing in that court, we conclude the sole issue on appeal is premature and dismiss the appeal.

---

[*] Before Levy, Acting P. J., Peña, J. and Harrell, J.

[1] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin W.* (2021) 70 Cal.App.5th 735, 739, fn. 1, disapproved in part on another ground by *In re Dezi C.* (2024) 16 Cal.5th 1112, 1152, fn. 18 (*Dezi C.*).)

[2] Undesignated statutory references are to the Welfare and Institutions Code.

[3] Neither of the two mothers of the children is a party to this appeal.

On April 25, 2024, the agency filed a dependency petition alleging Dillon H. (born October 2014) and Destiny H. (born January 2016) were described by section 300, subdivisions (b)(1) and (g) (case No. 24JP-00038-A, B).[5]  The petition alleged the children were at substantial risk of serious physical harm as a result of father's history of substance abuse, chronic homelessness, and unaddressed mental health issues.  Dillon and Destiny had poor hygiene and lacked stable housing and food sources.  They had not attended school for two months and father had neglected their medical and dental needs.  Father was arrested on April 23, 2024, after he was found smoking methamphetamine with a stolen gun in his possession while the children were playing at a nearby park.  Kimberly, Dillon and Destiny's mother, lived in Utah.  The children had been removed from Kimberly's care in 2016, due to her substance abuse.

The agency filed a detention report dated April 26, 2024.  The social worker reported ICWA did not apply.  Kimberly had denied any Indian heritage.  In a previous Merced County detention case (No. 20JP-00113-A, B), the juvenile court found ICWA did not apply to Kimberly in 2020.  In October 2020, father stated his biological mother had Choctaw Native American heritage.  Notices were mailed to the Bureau of Indian Affairs (BIA) and three Choctaw tribes.  All tribes responded that the children were not eligible for membership.  In 2021, the court found ICWA did not apply to father.  In a dependency case in Clark County, Nevada (case No. J-16-337663-P2), it was found that ICWA did not apply for either parent.

The matter came before the juvenile court for a first appearance hearing on April 26, 2024.  Father did not appear at the hearing.  Kimberly appeared by phone.  The court

---

[4]  Because the sole issue on appeal is father's ICWA claim, we provide an abbreviated summary of the facts bearing on that issue or helpful for context.

[5]  The petition was later amended to remove the section 300, subdivision (g) allegation.

took judicial notice of the finding that ICWA did not apply to father in the prior Merced County dependency case and elevated father to presumed father status. The court noted the finding that ICWA did not apply to either parent from the Nevada dependency case. Kimberly confirmed she had not learned new information that she may have Indian ancestry or heritage in her family. The court found that "at this point, ICWA does not apply." The court further found a prima facie showing had been made that Dillon and Destiney came within section 300, subdivision (b)(1) as there was substantial danger to the physical health of the children and no reasonable means to protect them without removal from the parents' custody. Dillon and Destiny were placed in a foster home.

The agency issued a jurisdiction/disposition report dated May 23, 2024, wherein the agency recommended the juvenile court find ICWA does not apply. On May 7, 2024, Kimberly told the social worker her family does not have any Indian heritage. She was adopted at the age of five and has several biological and adopted siblings. Kimberly developed a relationship with her biological mother when Kimberly became an adult. On May 14, 2024, father told the social worker his family does not have any Indian heritage. He was adopted at approximately 18 months old, and his biological parents were deceased.

The juvenile court held a hearing on May 23, 2024. The court again took judicial notice of the prior Merced County dependency case finding ICWA did not apply. Father denied learning any new information since then that he may have Indian heritage. The court advised the parents that if they learn they may have Indian ancestry to bring that information to the court. The matter was continued.

The juvenile court held a jurisdiction hearing on May 30, 2024. The court found true the allegation under section 300, subdivision (b)(1) and that returning Dillon and Destiny to parental custody remained detrimental. Pursuant to the agency's recommendations, the court ordered reunification services for Kimberly, a psychological evaluation of father, and supervised visits with father no less than once per month.

4.

Father married his fiancé, K.D., in October 2024, and K.D. gave birth to son A.H. in November 2024. On December 26, 2024, the agency filed a dependency petition alleging A.H. was described in section 300, subdivisions (b)(1) and (j) (case No. 24JP-00155-A). A referral of general neglect had been made to the agency on December 4, 2024. The petition alleged A.H. was at substantial risk of serious physical harm for the same reasons in Dillon and Destiny's dependency case. The petition further alleged A.H.'s siblings were abused or neglected by father and A.H. was at substantial risk of suffering abuse or neglect.

K.D. had four siblings. Her father was deceased, but her mother was still alive. On December 26, 2024, father told the social worker he had Choctaw Nation heritage. On the same date, the social worker left a voicemail for the Choctaw Nation of Oklahoma and attempted to contact the Mississippi Band of Choctaw but was unable to leave a voicemail. The social worker sent an email to the Choctaw ICWA director inquiring about possible confirmation of registration with the Choctaw Nation of Oklahoma. She also sent an email to the Choctaw ICWA coordinator.

On December 27, 2024, the juvenile court held a detention hearing regarding A.H. The court took judicial notice of the finding that ICWA does not apply to father in the prior dependency cases involving Dillon and Destiny. The court noted it had also made a finding in 2024 regarding those children that ICWA did not apply to father, but the social worker had received new information father may have a connection to a Choctaw tribe. Because this was being investigated by the agency, the court deferred the issue of ICWA for father. After questioning K.D. about any Indian heritage, the court concluded it had no reason to believe ICWA applied to her. A.H. was to remain in K.D.'s custody with a safety plan in place and the matter was continued. At the subsequent hearing on December 30, 2024, the court found continued placement of A.H. was contrary to his welfare and vested the agency with his temporary placement and care. A.H. was placed with K.D. in a residence with K.D.'s relatives.

5.

On February 19, 2025, the juvenile court held a jurisdiction hearing in A.H.'s case. The court took jurisdiction over A.H. pursuant to section 300, subdivisions (b)(1) and (j). Father was elevated to presumed father status.

On March 18, 2025, the agency filed a declaration regarding A.H. from its ICWA representative. A Notice of Child Custody Proceeding for Indian Child (ICWA-030 form) had been sent to the BIA, the Choctaw Nation of Oklahoma, the Jena Band of Choctaw, and the Mississippi Band of Choctaw Indians. The agency received responses from the tribes indicating A.H. was not eligible for membership.

Father underwent two psychological evaluations. Both psychologists concluded father would not benefit from reunification services due to his substance abuse and mental health issues. Father's counsel retained a psychologist to evaluate father a third time. That psychologist opined that if father was successful at developing alternatives to substance use to address his underlying psychological difficulties, his prognosis for reunifying with his children would be substantially enhanced.

On May 13, 2025, Dillon and Destiny's case came on calendar for a review hearing. Father was not present. His counsel advised the juvenile court that father was "well aware" of the hearing's date and time, and counsel had lost contact with father. Counsel had no evidence to present without father. The agency requested father be denied reunification services based on his psychological evaluations. The court found father had made no progress at reunifying with Dillon and Destiny and ordered no reunification services be offered to him. The court ordered supervised visitation with father not less than once per month and Dillon and Destiny were allowed to opt out of visitation. The court did not discuss ICWA's application as to Dillon and Destiny.

On May 13, 2025, the juvenile court also held a combined jurisdiction/disposition hearing in A.H.'s case. The court stated, "ICWA does not apply." The court found by clear and convincing evidence that reunification services to father were not appropriate under section 361.5, subdivision (b)(2). The court ordered A.H. to remain in K.D.'s care

with a plan of family maintenance.

On May 19, 2025, father filed a notice of intent to file a writ petition challenging the orders issued on May 13, 2025, in both dependency cases. On June 4, 2025, on this court's own motion, father's notice of intent was deemed to be a notice of appeal as the proper method for challenging the disputed orders. On father's motion, this court ordered the appeals in both cases consolidated under case No. F089901.

## DISCUSSION

### I. Applicable Law

Enacted in 1978, ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family. (25 U.S.C. §§ 1902, 1922; *Dezi C.*, *supra*, 16 Cal.5th at pp. 1128–1129.) Under ICWA's state analogue, the California Indian Child Welfare Act (§ 224 et seq.) (Cal-ICWA), "courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child … is or may be an Indian child' in dependency cases." (*Dezi C.*, at p. 1124; § 224.2, subd. (a); Cal. Rules of Court,[6] rule 5.481.) ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (b) [adopting federal definition of "Indian child"].)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry*

---

[6] Further rule references are to the California Rules of Court.

7.

regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id*., subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id*., subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

We review a juvenile court's finding there is no reason to know whether a child is an Indian child for substantial evidence and the court's finding that the agency has conducted a proper and adequate inquiry and due diligence for abuse of discretion. (*In re K.H.* (2022) 84 Cal.App.5th 566, 600–601.)

## II. Analysis

Father contends the juvenile court and the agency did not comply with ICWA because the agency failed to interview known paternal and maternal relatives regarding possible Indian ancestry. Father requests conditional reversal of the court's orders and a limited remand for an adequate ICWA inquiry. The agency does not expressly concede its ICWA inquiry was inadequate but acknowledges the record on appeal does not reflect the scope and extent of its ICWA efforts.[7] The agency contends even if it fell short of ICWA's requirements, vacating the court's ICWA findings or conditionally reversing the orders is not necessary. Because both dependency cases are still ongoing, the agency argues the court's findings and orders may be affirmed or alternatively the appeal

---

[7] Father advised this court he would not be filing a reply brief based on the agency's responsive brief.

8.

dismissed as moot. The agency, however, has no objection to a conditional reversal and remand with directions to ensure compliance with ICWA.

Though father claims the juvenile court entered "final orders" ICWA does not apply to the children, the record reflects otherwise. In Dillon and Destiny's case, the court took judicial notice of the prior ICWA findings regarding father and Kimberly and found ICWA did not apply "at this time" at the detention hearing on April 26, 2024. The court did not make any further ICWA findings regarding Dillon and Destiny at subsequent hearings and the proceedings regarding Dillon and Destiny remain ongoing. As to A.H., at the detention hearing the court found it had no "reason to believe" ICWA applied to K.D. but deferred a finding on ICWA for father. At the jurisdiction/disposition hearing on May 13, 2025, the court stated "ICWA does not apply." Though this statement indicates a potential final finding, the proceedings regarding A.H. are also still ongoing and the finding remains subject to reversal in future proceedings. (§ 224.2, subd. (i)(2).)

"Compliance with ICWA is required before terminating parental rights." (*In re K.M.* (2015) 242 Cal.App.4th 450, 458.) A conditional reversal of a juvenile court's order terminating parental rights is necessary when the agency has failed to conduct an adequate inquiry, supported by record documentation. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1125.) However, when a court has not made a final ICWA finding and the proceedings are ongoing, appellate courts have found ICWA claims of error are not ripe for review. (See *J.J. v. Superior Court* (2022) 81 Cal.App.5th 447, 461; *In re M.R.* (2017) 7 Cal.App.5th 886, 904 [claims of ICWA error were premature where the court found ICWA may apply at the dispositional hearing but had not made a final ICWA ruling]; *In re Baby Girl M.* (2022) 83 Cal.App.5th 635, 638–639 [dismissing appeal as moot at the jurisdiction/disposition stage where the juvenile court and the department remained obligated to comply with ICWA inquiry and notice requirements].) Where "the dependency case is still ongoing, any perceived deficiencies with ICWA inquiry and

noticing may still be resolved during the normal course of the ongoing dependency proceedings." (*J.J.*, at p. 461.) Furthermore, if the agency acknowledges error and understands its duty of inquiry, it makes "little sense to reverse the jurisdiction/disposition order in order to direct the Agency and the juvenile court to do something they recognize they must do anyway." (*In re S.H.* (2022) 82 Cal.App.5th 166, 177.) "Where there is such an acknowledgement, [there is] no reason to set aside the jurisdiction/disposition order—even conditionally," given "the duty to inquire is a *continuing* one." (*Id.* at p. 176.)

Here, the agency's response to father's appeal amounts to a qualified concession that at minimum, the agency did not document all its ICWA efforts. "[W]hile the Agency 'is not required to "cast about" for information or pursue unproductive investigative leads' [citation], it has 'an affirmative and continuing duty, beginning at initial contact [and continuing thereafter], to inquire whether a child who is subject to the proceedings is, or may be, an Indian child' [citation] and to *include in its reports a discussion of what efforts it undertook to locate and interview family members who might have pertinent information* (rule 5.481(a); § 224.2, subd. (a))." (*H.A. v. Superior Court* (2024) 101 Cal.App.5th 956, 966, italics added.)[8] The agency thus not only has a duty to inquire but must also "document its inquiry in compliance with rule 5.481(a)(5)." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1136; *In re Jerry R.* (2023) 95 Cal.App.5th 388, 428 [ICWA inquiry must be properly developed and documented].)

Because both cases remain ongoing, as is ICWA compliance, we conclude father's ICWA claim is not ripe for review and reversal of the orders is unnecessary. Father's complained of deficiencies, as well as any other alleged deficiencies, with the agency's

---

**8** Rule 5.481(a)(5) provides that an agency "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes."

ICWA inquiry may be brought to the attention of the juvenile court and resolved in the normal course of the ongoing dependency proceedings.

Though father's ICWA claim is premature, we briefly address the parties' arguments about the prior ICWA findings made in 2020 and 2021 to clarify their impact on the agency's duty of inquiry. Father argues none of the documents supporting the prior ICWA findings are included in the record and there is consequently no basis to conclude those "no ICWA" findings are correct. The agency argues against minimizing the prior ICWA findings. The agency contends the juvenile court not only took judicial notice of the prior dependency cases but also directly asked father and Kimberly if they had any new or additional information about Indian ancestry since then. The agency claims at that point, there was no "reason to believe" Dillon and Destiny were Indian children, and no further inquiry was warranted under these specific facts.

It has been found that a juvenile court may reasonably rely on a prior undisputed and unchallenged ICWA finding involving the same family. (*In re Charles W.* (2021) 66 Cal.App.5th 483, 490.) But a prior ICWA finding *alone* does not necessarily mean the ICWA inquiry was adequately conducted in a previous dependency proceeding. (See e.g., *In re M.E.* (2022) 79 Cal.App.5th 73, 84–86 [the department's ICWA inquiry was inadequate where the department relied in part on another county's inadequate ICWA investigation].) The agency cites no legal authority indicating its duty under section 224.2, subdivision (b) changes in a subsequent dependency proceeding, or that it can rely on the findings from a prior proceeding without conducting any additional inquiry. The agency has an "affirmative and continuing duty to inquire" if the children are Indian children (§ 224.2, subd. (a)) and that duty is not satisfied by relying on a prior finding from years ago that ICWA does not apply.

We anticipate the agency will comply with ICWA's requirements to ensure the juvenile court may make a fully informed finding on ICWA's application in both dependency cases. "The Agency must comply with its broad duty to complete all

11.

appropriate inquiries and apprise the court, and the court has a continuing duty to ensure that the Agency provides the missing information. So long as proceedings are ongoing and all parties recognize the *continuing* duty of ICWA inquiry, both the Agency and the juvenile court have an adequate opportunity to fulfill those statutory duties." (*In re S.H.*, *supra*, 82 Cal.App.5th at p. 179.)

## DISPOSITION

The appeal is dismissed.